**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Samuel Rea COOPER, III, Defendant-Appellant.**

No. 72–2415
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1973.
Rehearing and Rehearing En Banc Denied March 12, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Allan P. Clark, Jacksonville, Fla., Court-appointed for defendant-appellant.

John L. Briggs, U. S. Atty., Rudy Hernandez, John J. Daley, Jr., Asst. U. S. Attys., Jacksonville, Fla., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

PER CURIAM:

Samuel Rea Cooper, III, was convicted of violating 18 U.S.C., § 2113(a), having been found guilty of robbing the First Guaranty Bank and Trust Company of Jacksonville, Florida, the deposits of which were then insured by the Federal Deposit Insurance Corporation. The government's evidence in this case consisted of eye-witness testimony and the testimony of an accomplice. Appellant was sentenced to serve a term of twenty years. We affirm the conviction.

On October 13, 1971, Mrs. Mary M. Brengel was conducting her usual business as a teller at the drive-in window facilities of the First Guaranty Bank. A lone, unmasked person drove up to her booth in a light colored automobile; he reached over to his glove compartment and stated: "I think I've forgotten it." He drove off and returned to the same booth approximately twenty-five minutes later and placed a bank deposit bag in the teller's drawer. Mrs. Brengel opened the satchel and discovered a note along with a curious plastic box. The note read: "This is a radio-controlled bomb. Put your money in the bag."

Mrs. Brengel glanced at the driver who was now holding a device similar in appearance to a transistor radio. Fearing for her life, she followed the instructions and filled the bag with $2200 and returned it to the driver, who then sped away. Mrs. Brengel did jot down the license number of the automobile as well as a rough outline of the robber's salient characteristics.

During the course of this occurrence a Mr. Hazelhurst, who was in the vehicle directly behind the robber's, began wondering why the person preceding him was causing such delay. Mr. Hazelhurst only glimpsed the profile of the man, yet he paid particular attention to him as he bore a marked resemblance to an acquaintance of his. Mr. Hazelhurst was unaware that he was witnessing the execution of a bank robbery.

Appellant first contends that the district court erred in denying his motion to suppress and/or strike the identification testimony of eye-witnesses Brengel and Hazelhurst.

On the day of the robbery Mrs. Brengel was shown numerous photographs at the Duval County Police Station and was unable to make an identification. Some eight days after the incident the FBI told Mrs. Brengel that they may have some suspects and that they had some pictures they wanted her to see. The FBI showed her a photo spread which consisted of two sets of photographs, one being in black and white and the other in color. There were eight photos in the black and white set and ten in the color set.

Appellant's picture appeared once in each set while no other person's picture was repeated. Mrs. Brengel identified appellant's picture in each of the sets.

Five days after the photographic identification Mrs. Brengel attended a line-up which consisted of six men who, excepting one, fairly matched the appellant's physical characteristics. She, once again, picked out appellant. In the course of the trial Mrs. Brengel again positively identified the appellant as the bank robber.

Robert Hazelhurst, who observed the robber's profile while waiting in line

at the bank's drive-in facilities, was not shown any photographs but he did attend the line-up with Mrs. Brengel. Hazelhurst was also told by the FBI that they had a man they wanted him to see. At the line-up Hazelhurst requested the men to turn to give him a profile view. He identified the appellant and, although he could not be absolutely certain, he was "as sure as he could be." Eye-witness Hazelhurst also identified the appellant during the course of the trial.

Appellant alleges that the photographic identification procedure as employed denied him his fundamental rights of due process. We disagree.

The United States Supreme Court has held that convictions based on eye-witness identification at trial following a pre-trial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The Court indicated that the chance of misidentification would be heightened if a picture of a single individual recurs in the photographic spread or is in some way emphasized. However, a recurrence of one person's photograph within a group of pictures does not necessitate a finding that the photographic identification was impermissibly suggestive. United States v. Ballard, 423 F.2d 127, 132 (5th Cir., 1970). The identification may stand even though the procedure employed may have in some respects fallen short of the ideal, providing that the procedure when viewed in the totality of its own circumstances meets the fundamental test of fairness. Simmons, supra.

As stated in United States v. Sutherland, 428 F.2d 1152, 1156 (5th Cir., 1970):

" . . . Clearly, if a teller in a bank is held up by a person he knows well, a picture spread, regardless of its suggestiveness, is unlikely to affect the teller's identification. But if the witness caught only a fleeting glimpse of an unknown fleeing felon, the likelihood of misidentification is substantially increased by a suggestive picture spread. Between these two extremes, the determination must be made upon the facts in the particular case."

Since Mrs. Brengel had viewed the robber for approximately five minutes, appellant's case rests between these two poles. Under the facts of this case the recurrence of appellant's photograph within the sets displayed did not render the in court testimony concerning this procedure excludable under the rule of Simmons.

Prior to viewing the spread of photographs the witness Brengel was told that the FBI "may have a suspect." Similarly, the FBI prior to the line-up told Hazelhurst that they wanted him to "see a man." At no time did the FBI or other law enforcement officials make any suggestion that appellant was "the man." The possible suggestiveness caused by the repetition of appellant's photograph and the FBI's statement does not in the context of the facts in this case so undermine the reliability of the eye-witness identification as to violate due process.

We have carefully examined appellant's remaining contentions and find them to be without merit.

The judgment of the district court is affirmed.