**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Billy Lafayette BURKE, Defendant-Appellant.**

No. 73–3581

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 21, 1974.

---

* Rule 18, 5 Cir.; Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

R. Thomas Jarrard, Gainesville, Ga. (Court-appointed), for defendant-appellant.

John W. Stokes, U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

WISDOM, Circuit Judge:

Billy Lafayette Burke appeals from his conviction for unlawfully carrying on the business of a distiller without giving bond, a violation of Title 26, United States Code, Sections 5601(a)(4) and 5173(a). He (1) challenges the sufficiency of the evidence to support the verdict, (2) alleges that an in-court identification of him as the lessee of the house where an illegal still was located was inadmissible because it was the product of an improper photographic identification, and (3) urges that because of a colloquy among a juror, the court reporter, and a government witness, his motion for a mistrial should have been granted. These grounds are without merit. We affirm.

On December 19, 1972, agents of the Alcohol, Tobacco, and Firearms Division of the United States Treasury Department and Georgia Revenue Department agents began surveillance of a six-room house on the property of Thomas London in White County, Georgia. London had rented the house in November to Burke who had used the fictitious name "Larry Justice". The agents undertook the surveillance on information that there was a non-registered distillery on the premises. The agents observed the defendant working on a water line running between a near-by creek and the house and, later, carrying firewood and large butane gas bottles into the house. When it grew darker that day, the agents moved closer to the house and were able to see enough to conclude that

the distillery was being operated that night. They smelled the odor of cooking mash and heard the sound of a boiler being run. No one left the house until, apparently, the liquor run was completed in the early morning hours.

The agents kept the house under periodic surveillance for the next seven days. Probably because of cold weather, there was no further activity until December 27th. On that day the agents saw an unknown person unloading what appeared to be plastic jugs from a car parked near the house. After obtaining a search warrant, the agents conducted a raid on the house the following evening. They arrested Douglas Davis, Burke's codefendant. Burke was arrested when he and another individual, who escaped, arrived at the house several hours later. Inside the house the agents discovered a large distillery, fueled by butane gas, as well as plastic jugs containing 801 gallons of whiskey on which no tax had been paid.

After an initial mistrial, Burke was convicted by a jury upon his plea of not guilty, and was sentenced to two years imprisonment.

## I.

In evaluating Burke's assertion that the evidence was insufficient to sustain the verdict, the evidence must be viewed in the light most favorable to the Government. If, so viewed, there is substantial evidence to support the verdict, it must be affirmed. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704.

■ Four agents testified that they observed Burke working in and about the house where the still was discovered, on a day when a "run" of illegal whiskey was made. London identified Burke as the person to whom he had rented the house in which the illegal distillery was discovered. The defendant was apprehended at the house, getting out of an automobile that had been observed at the scene several times by the agents conducting the surveillance of the sus-pected distillery. Although the defendant offered an alibi defense, the jury was entitled to disbelieve it and to accept the testimony of the Government's witnesses. Considering these circumstances and the record as a whole, the evidence adduced in support of the Government's case was clearly sufficient to sustain the conviction. See United States v. Hendrix, 5 Cir. 1973, 487 F.2d 893 (per curiam).

## II.

Burke challenges the method of pretrial identification by which London identified him from photographs in the possession of the investigating agents. He contends that the method was unnecessarily suggestive, in that each of four photographs shown to London contained two pictures of the individual depicted, whereas the photograph of Burke had him depicted but a single time.

■ The standard by which such challenges must be judged is outlined in Simmons v. United States, 1968, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253:

> [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

■ We have examined the photographs in question. We cannot agree that the single depiction of the appellant, when his picture is viewed with the other photographs, is impermissibly suggestive to such an extent as to give rise to *any* likelihood of misidentification. First, London had two opportunities to see Burke before he was shown the photographs, once for a period long enough to conclude a rental agreement for the house in which the illegal distillery was discovered. This, of course, reduced the impact of the photographs on

London's in-court identification. Moreover, all of the other photographs depict individuals who appear to be about the same age as the appellant, and at least two are of the same general body type. Thus the appellant's picture did not "stand out" so as to prompt London's selection of Burke as the person to whom the house had been rented. We consider that the in-court idenification of Burke by London was not the product of an improper pretrial photographic identification, and that the identification was properly admitted under *Simmons*. See United States v. Kimbrough, 5 Cir. 1973, 481 F.2d 421, 425; United States v. Cooper, 5 Cir. 1973, 472 F.2d 64, 66; 18 U.S.C. § 3502.

### III.

Finally, Burke urges that reversal of his conviction is required due to the denial of his motion for a mistrial based on an off-the-record conversation by Agent Joe Walker, the Government's chief witness, the court reporter, and at least one of the jurors. It occurred during a ten-minute recess. So far as the conversation, which was not recorded, could be reconstructed, a juror initiated it with a comment about getting something to drink, and the court reporter rejoined that she had something to drink, and that it was water. The juror apparently commented that he wasn't sure that the liquid in the court reporter's cup was water, that it might be "evidence". At this point, Agent Walker, who was still on the witness stand, observed that if the substance in the cup was "evidence", the court reporter would not be able to operate her stenotype machine. Apparently this comment was made in a fairly audible voice, since the jurors and spectators were all laughing about it when the defense attorney reentered the courtroom.[1]

---

1. Exact reconstruction of the conversation is difficult, since the trial judge was out of the courtroom when the incident occurred. On motion by defense counsel, however, he conducted a void dire inquiry into the incident as soon as he learned of it:

MR. REA: May it please the Court, we have a motion to make outside of the hearing of the jury.

THE COURT: All right, I will have to ask you to step out in the hall while I hear this motion.

All right, sir.

MR. REA: May it please the Court, we at this point move for a mistrial on the ground that when we returned to the courtroom a few minutes ago that Agent Walker and others were having a discussion with the jury and laughing and talking and we feel this was prejudicial.

THE COURT: With this jury, is that correct?

MR. STOKES: Conversation with the jury?

THE COURT: After what happened in this case before, how anybody could do that. If the defendant wants to go back to the state jail—

MR. REA: We move—would Your Honor hear the matter as to what happened?

THE COURT: Well, I have instructed everybody not to talk to the jury and the jury not to talk to them. Now, this happened the last time we tried this case, and that is the reason I sent them upstairs instead of out in the hall. What did happen? I don't care what the conversation was.

MR. STOKES: My observation from what I saw, I will have to say I came in here and sat down and Mr. Walker was standing here and the Court Reporter had a cup of water and there was some conversation between the reporter and the jurors, one of them had asked her what she was drinking and something was said about it's a white liquid. I didn't hear what was in the cup.

Then a statement was made about, as I recall it, there was the conversation between the Court Reporter and the jurors that there was one trial in which some evidence went out and somebody thought it all didn't come back—joking about that.

THE COURT: Well, what about the Government's witness?

MR. STOKES: He wasn't talking to the jurors, he was talking to her, and said if there was anything in that cup but water she wouldn't be able to transcribe the testimony, or something like that, and I didn't understand—it was a conversation between her and the jurors, he just got in on the tailend of it.

THE COURT: Well, Mr. Walker is under oath. You tell me what happened.

MR. WALKER: One of the jurors said something about getting something to drink. The Court Reporter said well, she took a drink but it was water, and then the juror said that he wasn't sure, that it

■ The standards governing allegations of improper extrajudicial conduct by jurors in criminal cases are outlined by the Supreme Court in Remmer v. United States, 1954, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656:

> In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the jury was harmless to the defendant. [citations omitted].

The inquiry here, then, might be made on two grounds; first, whether the challenged interchange was "about the matter pending before the jury" and second, whether the defendant was prejudiced by the discussion. The grant or denial of a motion for mistrial on the ground of a prejudicial interchange is, of course, addressed to the discretion of the trial judge, to be exercised in accord with the principles outlined above. Only if we are convinced that his discretion has been abused, may we reverse the trial judge's denial of the mistrial motion. Tillman v. United States, 5 Cir. 1969, 406 F.2d 930, 937, vacated on other grounds, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742.

■ There was no abuse of discretion here, however, since it is apparent that the challenged colloquy was not prejudicial to Burke. Indeed, having read the reconstruction of the incident as related under oath by Agent Walker, it is not clear that the brief conversation was even "about the matter pending before the jury". Extrajudicial conduct cases in this circuit have typically dealt with communications pertinent to the disposition of an ultimate issue in the controversy, that is, to the jury's consideration of the guilt or innocence of the defendant. See, e. g., Tillman v. United States, supra; Morgan v. United States, 5 Cir. 1968, 399 F.2d 93, cert. denied, 1969, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568. Here, the only possibly relevant remarks would be those suggesting that whatever was in the court reporter's cup was "evidence", and hence intoxicating. Yet there was no issue as to the amount or character of the non-tax whiskey seized. The defendant did not contest the Government's assertion that the 801 gallons of liquid seized was whiskey. He relied on an alibi as a defense. Neither the liquor seized nor any of the apparatus used to produce it was introduced in evidence by either side. This jesting interlude could not have influenced the determination of any issue actually in controversy.

■ The appellant, however, rests his argument on a slightly different ground: that the exchange among witness, court reporter, and juror, which resulted in widespread laughter among the jurors and the courtroom spectators, established a spirit of camaraderie between the witness and the jury, thereby compromising the jury's impartiality. After having examined the record and the trial judge's curative instruction[2],

---

might be evidence, and I said well, she would't be able to operate that machine if it was evidence.

THE COURT: Anything else occur?
MR. STOKES: Nothing that I know of.
THE COURT: Do you know of anything else?
MR. REA: The only thing I know, the juror was laughing and the witness was laughing and everyone in the courtroom was laughing when we returned.

2. The court immediately instructed:
THE COURT: Bring the jury back.
Ladies and gentlemen, apparently when you returned to the courtroom before the Court came back in there was some remark made about about what the Court Reporter was drinking. I want to instruct you

we are convinced that, in this instance, the brief exchange did not prejudice the rights of the defendant or compromise the jury. This is not to say that we approve of the conduct of Agent Walker here. Law enforcement personnel and the United States Attorney should avoid the appearance as well as the fact of possible improper conduct. We merely conclude that in this case the trial court did not abuse its discretion in determining that the incident described above did not prejudice the trial of the defendant.

The judgment is

Affirmed.

that whatever was said you will disregard, it has nothing to do with this case, and do not let it affect your verdict in any way, either prejudice you for against [sic] the defendant on trial.

Now, I have given you instructions not to talk to anybody involved in the case, so even if they try to talk to you, until such time as a verdict is made, just turn around and walk off wherever you are.

Do you understand that whatever happened is not to influence you in any way in your making a verdict in the case, everybody understand that?

With those instructions, the motion is denied.