**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carol SMITH, Defendant-Appellant.**

**No. 76–1421.**

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1977.

---

Bobby D. Sutton, Glenn E. Walker, Shreveport, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., David R. Lestage, D. H. Perkins, Jr., Asst. U. S. Attys., Shreveport, La., for plaintiff-appellee.

Before JONES, WISDOM and GODBOLD, Circuit Judges.

WISDOM, Circuit Judge:

The defendant, Carol Smith, was convicted on two counts of violations of 18 U.S.C. § 2314 (1970), which provides in relevant part:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. . . .

## FACTS

Count I involves a deposit on October 20, 1975, in the First National Bank of Shreveport of a counterfeit cashier's check in the amount of $15,000, drawn on the Seatrain Shipbuilding Corporation's account with the Chase Manhattan Bank of New York. The check was processed in interstate commerce through the Federal Reserve Bank of New York. The account was opened October 15, 1975, in the name of Cecil Davis with a $100 cash deposit. On October 16, 1975, a money order in the amount of $50 from the Louisiana Bank and Trust Company of Shreveport, showing Carol Smith as the remitter, was deposited in the account. The next day a check in the sum of $125 made payable to cash was drawn on the account. On October 21, 1975, a black male unsuccessfully attempted to cash a check for $13,500 on the account. A witness at the defendant's trial, Bernard Paga, assistant manager of the Texas Avenue Branch of the First National Bank, identified the defendant as the neatly dressed black female who deposited the counterfeit check in the account of Cecil Davis on October 20 and who was "irate" at being unable to get immediate credit for the check. The photographic identification preceding Paga's in-court identification of the defendant is contested by the defense in this appeal.

Count II of the indictment charged the defendant, "a/k/a Betty G. Walker", with depositing in the National Bank of Bossier, Louisiana, on October 20, 1975, a counterfeit cashier's check, in the amount of $9,000, drawn on the account of the Seatrain Shipbuilding Corporation's Chase Manhattan Bank account and also processed in interstate commerce through the Federal Reserve Bank of New York. The Bossier checking account was opened on October 16, 1975, in the name of Betty G. Walker with a $100 cash deposit. The woman opening the account gave the Heritage Nursing Home as her place of employment. On

October 17, 1975, a money order for $50 made out to Betty G. Walker on the Louisiana Bank and Trust Company, showing the remitter to be Carol Smith, was deposited in the account; and a check in the amount of $75 was drawn on the account. Mrs. Rhonda Maynor, a teller employed at the National Bank of Bossier, testified that a black female identified by Dean Clark, the Manager of the National Bank of Bossier as the Betty G. Walker who opened the account, was in the bank from 11:55 a. m. until 12:55 p. m. on October 21, 1975. At that time she cashed an $8,500 check drawn on the account.

The defendant was arrested on October 21, 1975, while trying to cash a check for $6,000 made payable to, and signed by, Carol Smith at the Louisiana Bank and Trust Company. That account was opened with a $150 cash deposit on October 15, 1975, by a woman giving the name of Carol Smith and later identified by Ruth Wilson, the secretary who opened the account, as the defendant. On October 20, 1975, a counterfeit cashier's check in the amount of $6,500, drawn on the Seatrain Shipbuilding Corporation's account with the Chase Manhattan Bank was deposited in that account. On October 16, 1975, a money order payable to Carol Smith, showing Cecil Davis as the remitter, was deposited in the Louisiana Bank and Trust Company account. The next day a check in the sum of $150 made payable to cash was drawn on the account.

Detective Don Eason of the Shreveport Police Department testified at the trial that he arrested the defendant Carol Smith at 11:26 a. m. on October 21 at the Louisiana Bank and Trust Company and that she was in his custody during the time that a woman, known as Betty G. Walker, was cashing an $8,500 check at the National Bank of Bossier. Carol Smith was not charged in this case with an offense associated with the counterfeit check deposited in the Louisiana Bank and Trust Company. Her purse was seized when she was arrested and found to contain a notepad with the notation "NHBK of Bossier 166336406". That number corresponded to the account number of Betty G. Walker at the National Bank of Bossier. An identification card also found in the defendant's purse listed her place of employment as the St. Clair Nursing Home. The trial judge allowed the prosecutor to introduce the evidence of the transactions associated with the Louisiana Bank and Trust Company to show a pattern or course of conduct.

The defendant was found guilty of Counts I and II involving the transactions associated with the First National Bank of Shreveport and the National Bank of Bossier, respectively. She was sentenced to two consecutive five-year terms, later reduced to two consecutive two-year terms. The defendant raises two issues on appeal. First, was the photographic spread from which Paga initially identified the defendant so impermissibly suggestive as to create a substantial risk of misidentification, warranting the exclusion of his identification testimony from the trial? Second, does the evidence in the record support the verdict of guilty on Count II?

I.

## PHOTOGRAPHIC IDENTIFICATION PROCEDURE

The defendant-appellant challenges the admissibility of Paga's in-court identification of the defendant on the ground that the photographic spread from which the witness's initial identification was made was so impermissibly suggestive as to create a substantial risk of misidentification. At the time that the counterfeit nature of the check deposited in the First National Bank of Shreveport became known, Bernard Paga described the depositor to the police as a neatly dressed black female with shoulder length black hair in a straight pageboy style. He said that she was wearing blue slacks and was 5′5″ in height. Paga said that he guessed the depositor was wearing a wig. He observed her during the time it took for him to examine the cashier's check and tell her that she could not get immediate credit.

Approximately five days after the counterfeit check was deposited at the First National Bank on October 20, 1975, the Federal Bureau of Investigation asked Paga to examine six photographs of young black women to determine if he could identify the depositor. Paga selected the defendant's picture. The FBI agent then showed Paga a full-length picture of the defendant and he identified that also.

▌ In the intervening two months before trial, Paga did not see the photographs of the defendant. At the beginning of the trial, the defendant's counsel made a motion to exclude the identification of Carol Smith on the ground that the photographic spread was impermissibly suggestive in three ways: (1) in the composite photograph only the defendant was pictured dressed in civilian clothes, (2) the other five pictures suggested criminals, and (3) the defendant's picture was lighter in color than that of the others. The trial judge, after inspecting the photographic spread, denied the motion.[1]

▌ The Supreme Court in *Simmons v. United States,* 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, established the standard for judging photographic identification procedures:

[A] pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

390 U.S. at 384, 88 S.Ct. at 971. It is the likelihood of misidentification that violates a defendant's right to due process and not merely the existence of an impermissibly suggestive photographic procedure. *Neil v. Biggers,* 1972, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 410–411. An "impermissibly suggestive" picture spread re-

quires the exclusion of any in-court identification for which there was a "substantial likelihood of irreparable misidentification". *United States v. Sutherland,* 5 Cir. 1970, 428 F.2d 1152, 1155, *cert. denied,* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668.

In *United States v. Henderson,* 5 Cir. 1973, 489 F.2d 802, 805, *cert. denied,* 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217, the Court determined that under *Sutherland* the *Simmons* standard becomes a two-step test:

[t]he district courts are to determine separately (1) whether the procedures followed were "impermissibly suggestive", and then (2) whether, being so, they created "a substantial risk of misidentification". To make these determinations, the district courts, under *Sutherland,* are to conduct in camera hearings to inquire into the circumstances of challenged identification procedures.

Here the district court examined the photographic spread and concluded that the motion should be denied.

▌ The court reached this conclusion without holding a hearing. Although the language of *Sutherland* and *Henderson* can be read to require a hearing whenever *Simmons*-type issues are raised, the Fifth Circuit has now decided that no strict hearing requirement was imposed by either case. *United States v. Jackson,* 5 Cir. 1971, 451 F.2d 259, 262; *United States v. Wingard,* 4 Cir. 1975, 522 F.2d 796, 798, *cert. denied,* 423 U.S. 1058, 96 S.Ct. 792, 46 L.Ed.2d 648. Whether a hearing must be granted is a matter within the sound discretion of the district court. *United States v. Poe,* 5 Cir. 1972, 462 F.2d 195, 197, *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83. "An evidentiary hearing is not required where none of the critical facts are in dispute and

---

1. There is no merit to the Government's contention, on appeal, that counsel for the defendant's objection was insufficient to raise the question of admissibility for lack of specificity. The defense attorney stated his objection as follows:

We would like to make a motion about the out-of-court identification that was made af-

ter a photographic spread was shown to make it inadmissible because the photographs show that the defendant was the only person that looked like she was dressed in civilian clothes. All five other pictures would suggest the person was a criminal. The defendant's picture is lighter than the other five.

the facts as alleged by the defendant if true would not justify the relief requested." *Id.* In *Poe* the Court cited with approval the guidelines adopted by the Ninth Circuit in *Cohen v. United States,* 9 Cir. 1967, 378 F.2d 751, 761, *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215:

> The question is whether the allegations of the moving papers, including affidavits if any are filed, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient and factual issues are raised, a hearing is required.

In this case the defendant did not file a written motion to exclude the identification. But the oral motion was made with three specific reasons for exclusion.

As we have already stated, the defendant's claim to the court was that the photographic identification procedure was impermissibly suggestive in that only the defendant was depicted in civilian clothes. An examination, even cursory, of the photo spread permits the conclusion that the claim is insubstantial; at least one woman other than the defendant is depicted in civilian clothes.

The second reason given by the defendant was that the other five pictures suggested criminals. The five women appear sullen; four of them have cold staring eyes. The defendant's expression however is not markedly different. Only two of the women are pictured wearing prison garb. Four of the other women are shown with unkempt hair; the fifth, with bleached, unstyled but neat hair. The defendant is depicted with her hair very close to her head, perhaps cropped. The defense stresses Bernard Paga's testimony on the differences in the hair styles of those pictured as indicative of the suggestiveness of the photo spread.

The Court: Which one did you identify?

Bernard Paga: The one in the lower right hand corner.

The Court: What about her hair?

Bernard Paga: Their hair is messy.

Mr. Edwards [Counsel for the defense]: Is she the only black lady which has her hair combed?

Bernard Paga: Her hair is kinky and close to her head.

Mr. Edwards: Is that a short afro?

Bernard Paga: It looks like a short afro.

. . . . .

Mr. Edwards: Is there a suggestive difference in the hair of this lady?

Bernard Paga: There is a marked difference in the hair of the one I picked out and the other ladies in the picture.

■ That the witness testified to a marked difference in the hair of the defendant does not necessarily lead to the conclusion that the spread was impermissibly suggestive. Both to the police at the time of the investigation and later in court, Paga stated that the young woman who made the deposit of the counterfeit check at the First National Bank of Shreveport had long, shoulder-length, black hair which was probably a wig. Any differences in the hair styles of those pictured have nothing to do with the description Paga gave the FBI. Although the defendant is pictured with closely-cropped hair, the other five women are shown with short hair as well. Two women in addition to the defendant are pictured with neat hair. Further, Paga testified that he had picked the defendant from her facial features and not from her hair or clothes, because those could be changed. On the facts of this case, therefore, any differences between the defendant's appearance and that of the other five were not sufficient to justify labeling the photographic spread as impermissibly suggestive.

As for the third reason for objection to the photographic identification procedure, the defendant contends that her picture was lighter than the others. Once again, an inspection of the spread of photographs indicates that at least two other pictures are light in color and none are so dark as to make the defendant's picture more conspicuous than the others. This claim too must fail.

During oral argument the defendant's counsel, for the first time, raised a fourth reason for contending that the picture spread was impermissibly suggestive. During cross-examination Bernard Paga was asked to describe the woman who deposited the counterfeit check into Cecil Davis's account at the First National Bank. He replied:

> She had slacks and I believe they were blue in color. The best I recall, the blouse she had on had flowering and was a black color and I believe she had a straight page boy wig.

The defense argues that the defendant was depicted in the photographic spread wearing a black blouse with a "flowering" design. Therefore, the argument continues, by including such a picture in the spread, showing the defendant in a blouse similar to the one Bernard Paga said the depositor wore, the FBI was "suggesting" that Paga select her photograph.

■ Assuming that the defense can raise this argument for the first time on appeal, we reject the contention as a basis for the conclusion that the photographic spread was impermissibly suggestive. First, there is no evidence in the record that the FBI knew the female depositor was wearing a black blouse with a "flowering" design. When asked on cross-examination to repeat the description of the depositor that he had given the FBI, Bernard Paga stated:

> it was a black female dressed in slacks and if I remember correctly they were blue in color and she had shoulder length hair and was approximately five foot five inches in height.

If Paga did not describe the blouse to the FBI, then there was no way they could have guarded against suggestiveness as to the way she was attired in the photograph. Even if on the witness stand Paga forgot that he had described the depositor's blouse to the FBI, the blouse in which the defendant is depicted in the photo spread does not obviously conform to the description of a black blouse with a "flowering" design.

■ Under the *Poe* and *Cohen* standard we conclude that the district court was not

in error in failing to conduct a hearing on the issue of impermissible suggestiveness. The court found, in effect, after examining the photographic spread, that there was no issue of fact as to its suggestiveness.

■ Finally, the defendant contends that Bernard Paga's testimony about his in-court identification of the defendant establishes that the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification:

> Mr. Edwards: Did you see the defendant sitting at the table?
>
> Bernard Paga: I saw her sitting at the table. I didn't see her face.
>
> Mr. Edwards: Were you aware you were going to testify today that the defendant was the individual who deposited that check for $15,000?
>
> Bernard Paga: I was here to identify whoever the defendant was.
>
> Mr. Edwards: You didn't look at her face?
>
> Bernard Paga: I couldn't see her face. She had her back to me.
>
> Mr. Edwards: You assumed she was the defendant?
>
> Bernard Paga: Yes, sir.

This testimony shows that there were definite, even dangerous, weaknesses in Paga's identification of the defendant in court. The nature of the testimony does not however require the determination that there was a substantial likelihood of irreparable misidentification.

■ As we concluded in *Henderson,* the *Simmons* standard establishes a two-step process. Only if the photographic spread is found to be impermissibly suggestive is the district court in a position to consider whether it created a substantial risk of misidentification. On the facts there is no basis for concluding that the photographic spread was impermissibly suggestive; consequently, the district court could not proceed to the second step in the analysis. As the Court reasoned in *Sutherland,* where the judge does not find as a matter of law that the picture spread was objectionable,

the defendant's only recourse is to use the circumstances of the identification procedure for cross-examination purposes in order to attack the credibility of the identifying witness. *United States v. Sutherland,* 428 F.2d at 1155. That is essentially what the defense counsel did in the present case. He cross-examined the witness, Bernard Paga, on both his out-of-court and in-court identifications of the defendant. Once Paga testified on these issues, it was for the jury to determine the weight to be given the witness's identification of the defendant.

■ Because the defendant has raised the issue of misidentification, we turn briefly to the second step of the *Sutherland-Henderson* test. We conclude that even if the photographic identification procedure used in this case was impermissibly suggestive, under the totality of circumstances there was no substantial risk of misidentification. In *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382, the Supreme Court listed the factors to be considered in evaluating the reliability of the identification:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Here Bernard Paga had the opportunity of seeing the depositor during the time that he examined the cashier's check and told her that she could not get immediate credit. In addition, the defendant's "irate" reaction to this information no doubt called his attention more specifically to her. Paga's description of the depositor to the police was the same as the description he gave two months later during the trial. The description matched that of the defendant, absent the shoulder-length, black hair. Both at the time of his identification of the defendant's photograph and later at trial, the witness was certain of the accuracy of his selection of her. Finally, only five days elapsed between the time of the deposit of

the cashier's check and the photo-identification procedure; only two months intervened between the deposit and the trial of the defendant. Under *Neil* these facts require the conclusion that even if the identification procedure was impermissibly suggestive, there was no irreparable danger of misidentification.

■ As we have noted before, an "identification may stand even though the procedure employed may have in some respects fallen short of the ideal, providing that the procedure when viewed in the totality of its own circumstances meets the fundamental test of fairness." *United States v. Cooper,* 5 Cir. 1973, 472 F.2d 64, 66, *cert. denied,* 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77. Ordinarily, there is less danger of improper photographic procedure when the photo spread is composed of a significant number of pictures. The danger of suggestiveness is greater in this case when only six photographs are used. Nevertheless, that fact of itself is not sufficient to reach the level of suggestiveness. Viewing the totality of the circumstances, we conclude that the fundamental test of fairness was met in this case.

## II.

### SUFFICIENCY OF EVIDENCE

As to the second count of the indictment, dealing with transactions associated with the deposit of a counterfeit cashier's check in the National Bank of Bossier, the defendant contends that the evidence was insufficient for a reasonable jury to reach the verdict of guilty. This contention is based upon several facts adduced at trial. The defendant was arrested at approximately 11:26 a.m. on October 21, 1975, at the Louisiana Bank and Trust Company. A woman identified as the Betty G. Walker, who had opened the account on October 16, was in the National Bank of Bossier on October 21, 1975, from 11:55 a.m. to 12:10 or 12:15 p.m. The defendant was in custody during the time that the woman identified as Betty G. Walker, the depositor of the cashier's check, was in the Bossier bank. She could not have been in two places at one time. She

cannot, therefore, be convicted of the activities associated with the deposit of the counterfeit check in the National Bank of Bossier.

The Government on appeal makes two counter-arguments. First, the United States contends that because the defendant failed to move for a judgment of acquittal at the close of the Government's case or at the close of all the evidence, under Rule 29, Fed.R.Crim.P., the defendant has waived all objection on appeal, unless the defendant's conviction is manifestly unjust. Second, the Government argues that the facts relating to the check deposits confirm its contention that even if Carol Smith was not the principal involved in the deposit of the check in the National Bank of Bossier, she aided and abetted the commission of that offense.

Considering the Government's first contention, we agree that in the absence of a timely motion for a judgment of acquittal, the question of sufficiency of the evidence is not presented for appeal—unless to deny appellate review of the issue would foster a manifest miscarriage of justice. *United States v. Perez,* 5 Cir. 1976, 526 F.2d 859, 864, n.7; *United States v. McGlamory,* 5 Cir. 1971, 441 F.2d 130.

Here, however, an evaluation of all the evidence applicable to Count II convinces us that the defendant's conviction on this count would result in a manifest injustice. The defendant could not have been the same woman who deposited the check in the Bossier account and later tried to withdraw funds from that account. And there is no evidence that she aided and abetted the commission of the offense.

There is no basis in the evidence for a conclusion that the defendant was the principal responsible for the counterfeit check venture at the National Bank of Bossier. The woman who cashed the $8,500 check drawn on the Bossier account of Betty G. Walker on October 21, 1975, was identified by Dean Clark, the manager of that bank, as the same woman who opened the account on October 17, 1975. During the time the check was being cashed on October 21, however, the defendant was in custody after her arrest at the Louisiana Bank and Trust Company. She was, therefore, neither the woman who deposited the counterfeit cashier's check nor the woman who attempted to make the withdrawal from the account.

The Government argues that whether a formal charge so states, a defendant may be convicted as a principal on a showing of merely aiding and abetting. "[T]he rule is well-established, both in this circuit and others, that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Bullock,* 5 Cir. 1971, 451 F.2d 884, 888. The question then is whether the Government's case against the defendant can sustain a conviction against her for aiding and abetting. We conclude that it cannot.

As to Count II few facts were adduced at trial as evidence to support the defendant's guilt. First, a notepad was found in the defendant's purse at the time of her arrest at the Louisiana Bank and Trust Company which carried the notation "NHBK of Bossier 166336406", a number corresponding with that of the account of Betty G. Walker at the National Bank of Bossier. Second, a money order of the Louisiana Bank and Trust Company showing the remitter to be Carol Smith was deposited in the account of Betty G. Walker at the National Bank of Bossier. Third, at the time of her arrest at the Louisiana Bank and Trust Company Carol Smith carried with her in her purse an identification card listing her place of employment as the St. Clair Nursing Home. The Government argues that these interlocking facts constitute a common plan, scheme, or design in which the defendant was involved, which included the deposit of the counterfeit cashier's check at the National Bank of Bossier.

The test for sufficiency of evidence, direct or circumstantial,[2] is "whether

---

**2.** Some Fifth Circuit cases have suggested that there is a more stringent test of the sufficiency of evidence in cases relying on circumstantial evidence. This Court has now established that

the jury could reasonably, logically, and legally infer from the evidence presented that appellant was guilty of violating the statute beyond a reasonable doubt".[3] *United States v. Bright,* 5 Cir. 1976, 541 F.2d 471, 476. *See United States v. Warner,* 5 Cir. 1971, 441 F.2d 821, 825. We conclude that a reasonable doubt as to the defendant's guilt on Count II existed. There was ample testimony to the effect that the purchaser of a bank money order may indicate anyone he wants as remitter. The fact that both Betty G. Walker and Carol Smith gave a nursing home, although not the same one, as the place of employment may be nothing more than a coincidence. The notation with the account number of Betty G. Walker at the National Bank of Bossier found on the defendant suggests at most that she may have had knowledge of the account and possibly of the transactions associated with that account. Facts tending to show that a defendant might have had knowledge of a criminal undertaking are not sufficient to prove that she was either a principal or an aider or abettor in a crime. *Hendrix v. United States,* 5 Cir. 1964, 327 F.2d 971, 974. Considering the evidence associated with Count II in a light most favorable to the Government, *United States v. Glasser,* 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; *United States v. Hawes,* 5 Cir. 1976, 529 F.2d 472, we conclude there is insufficient evidence to convict the defendant of aiding and abetting in the criminal undertaking associated with the National Bank of Bossier transaction.

In *United States v. Peoni,* 2 Cir. 1938, 100 F.2d 401, 402, Judge Learned Hand discussed the requirements for conviction of a defendant for aiding and abetting a criminal undertaking: the defendant must "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed". *See Nye & Nissen v. United States,* 1949, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919; *United States v. Greer,* 7 Cir. 1972, 467 F.2d 1064, 1068, *cert. denied,* 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590. The *Peoni* definition of aiding and abetting suggests two components:

> An act on the part of a defendant which contributes to the execution of a crime and the intent to aid in its commission.

*United States v. Greer,* 467 F.2d at 1069. In *Kaminiski v. United States,* 5 Cir. 1972, 460 F.2d 996, 998, we cited with approval the explanation of these requirements in *Johnson v. United States,* 8 Cir. 1952, 195 F.2d 673, 675:

> Generally speaking, to find one guilty as a principal on the ground that he was an aider and abetter, it must be proven that he shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term "aiding and abetting" implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not sufficient.

Other cases in which the evidence has been found to support a conviction for aid-

"[t]he same test . . . for judging the sufficiency of the evidence should apply whether the evidence is direct or circumstantial." *United States v. Warner,* 5 Cir. 1971, 441 F.2d 821, 825; *United States v. Moore,* 5 Cir. 1974, 505 F.2d 620, 623. *See Holland v. United States,* 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

**3.** Some opinions in this Circuit have phrased the test for sufficiency of evidence as whether a reasonably minded jury is able to find the evidence inconsistent with every hypothesis of innocence. *See, e.g., United States v. Moore,* 5 Cir. 1974, 505 F.2d 620, 623; *United States v.*

*Gomez-Rojas,* 5 Cir. 1975, 507 F.2d 1213, 1221. We prefer the formulation we have used here because of the confusion which may result from the "exclusion of hypothesis" approach, *United States v. Bright,* 5 Cir. 1976, 541 F.2d 471, 476 n.5. *See United States v. Nelson,* 9 Cir. 1969, 419 F.2d 1237, 1243–44. At any rate the differences in language in the two approaches involve merely verbalistic distinctions. *United States v. Warner,* 5 Cir. 1971, 441 F.2d 821, 825; *United States v. Bright,* 541 F.2d at 476 n.5. *See* C. Wright, Federal Practice and Procedure § 467 at 257–259 (1975).

ing and abetting illustrate the insufficiency of the evidence against the defendant on Count II. In *Nye & Nissen v. United States,* 336 U.S. at 619, 69 S.Ct. at 770, there was no direct evidence tying the defendant to the six false invoices involved in the substantive counts against him; but the circumstantial evidence supporting the jury's finding that the defendant aided and abetted in the commission of those offenses showed:

> he was the promoter of a long and persistent scheme to defraud, that the making of false invoices was a part of that project, that the makers of the false invoices were Moncharsh's subordinates, that his family was the chief owner of the business, that he was the manager of it, that his chief subordinates were his brothers-in-law, that he had charge of the office where the invoices were made out.

*See also Pereira v. United States,* 1954, 347 U.S. 1, 10, 74 S.Ct. 358, 363–64, 98 L.Ed. 435, 445; *United States v. Joiner,* 5 Cir. 1970, 429 F.2d 489, 493–94; *Theriault v. United States,* 8 Cir. 1968, 401 F.2d 79, 85, *cert. denied,* 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792, *reh. den.,* 394 U.S. 939, 89 S.Ct. 1201, 22 L.Ed.2d 474. In the instant case the circumstantial evidence against Carol Smith is far short of that found sufficient in *Nye.* Here the evidence does not establish that the defendant engaged in any act to further the scheme associated with Count II of the indictment. The only substantial evidence connecting her with the deposit of the counterfeit cashier's check in the National Bank of Bossier was the notation in her purse with the account number of Betty G. Walker at the Bossier bank. That evidence does not prove either an affirmative act to further the scheme on her part nor the criminal intent that the undertaking be successfully completed. *See also Hendrix v. United States,* 327 F.2d at 974. We conclude, therefore, that the evidence adduced against the defendant in connection with Count II of the indictment is far short of that necessary to sustain a conviction for aiding and abetting. The judgment against Carol Smith as to Count II is reversed.

AFFIRMED IN PART AND REVERSED IN PART.