United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 30, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
for the Fifth Circuit

No. 06-70030

HELIBERTO CHI,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and WIENER and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Petitioner Heliberto Chi was convicted in Texas state court and sentenced to death for the murder of Armand Paliotta. He comes before this Court to request a Certificate of Appealability ("COA") to appeal the district court's denial of federal habeas relief. Because we find that reasonable jurists could not debate the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conclusions of the district court, we deny his application.

## I. Background

The Texas Court of Criminal Appeals summarized the facts of the case as follows:

In the late afternoon of March 24, 2001, Chi entered the K & G Men's Store in Arlington and approached one of the employees. She recognized him as a former employee of the store. He questioned her about whether there were policemen on duty in the store and whether they were uniformed or in plain clothes. He also asked how many employees were working that day and she pointed them out. Chi then had a discussion with the manager, Armand Paliotta, and the assistant manager, Gloria Mendoza, in which he asked for, and was provided, the phone number of one of the employees. Chi remained in the store about 30 minutes before leaving. The store closed at 7 p.m. Paliotta, Mendoza, and another employee, Adrian Riojas, remained to attend to closing duties. Paliotta counted the money and prepared the bank bag for deposit, and Mendoza and Riojas shut down the computers and completed closing matters. Around 8 p.m., Chi knocked on the front door of the store and Paliotta unlocked the door and let him in. Chi stated that he had left his wallet in the tailor shop at the back and went to look for it. The others finished their closing duties and waited for Chi

2

at the front of the store. Paliotta, who was holding the bank bag, held the door open and prepared to set the alarm. As Chi reached the front doors, he pulled out a gun and told them to get back inside the store. Riojas went first, followed by Mendoza, and then Paliotta. Chi took the bank bag from Paliotta and told the three to go to the back of the store. As they were walking, Paliotta pushed Chi and began running to the front of the store. Chi ran after him and then stopped and fired at him. When he turned around, Riojas and Mendoza began running. Riojas ran into the warehouse, pursued by Chi. Riojas quickly found himself trapped by various locked doors. When he saw Chi approaching with his gun drawn, he began to run in a different direction. Chi shot Riojas in the back as Riojas was running from him. After Riojas fell, Chi stated, "Quedate apagado," which means, "Stay dead," in Spanish.

In the meantime, Mendoza ran toward the front of the store. She checked on Paliotta and saw that he had been shot. She called 911. Before talking to anyone, she heard the doors from the warehouse open so she set the phone down and hid beneath a rack of clothes. She could hear Chi's footsteps walking toward her and she heard Chi say, "Vente para frente," which means, "Come to the front," in Spanish. Mendoza remained where she was. After at least

3

ten minutes, Mendoza came out from beneath the rack and checked on Paliotta again. She could no longer detect any breathing. She returned to the phone to attempt to talk to someone at 911 and heard a conversation taking place between Riojas and the operator. The police arrived and Riojas and Mendoza ran outside. Paliotta died from a gunshot wound to the back. Riojas survived.

*Chi v. State*, No. 74,492, slip. op. at 3-5 (Tex. Crim. App. May 26, 2004).

Chi was convicted and sentenced to death for murdering Paliotta while in the course of committing or attempting to commit aggravated robbery. The Texas Court of Criminal Appeals ("TCCA") affirmed Chi's conviction and sentence and later denied Chi's application for state habeas relief. Chi filed a federal habeas petition in the U.S. District Court for the Northern District of Texas. On June 21, 2006, the district court denied Chi's request for habeas relief. Chi then filed a notice of appeal and motion for a COA, but the district court denied the COA motion. The instant application for a COA in this Court followed in which Chi asserts the following grounds:

(1) Chi alleges he was deprived of his rights under the Vienna Convention on Consular Relations when he was not informed of his right to contact the Honduran Consulate, and therefore, the Texas trial court should have suppressed inculpatory statements Chi made to police;

4

(2) Chi alleges Texas' death penalty scheme violates the Equal Protection Clause, under *Bush v. Gore*, 531 U.S. 98 (2000), because it lacks standards to guide prosecutors regarding whether to seek a death sentence; and

(3) Chi alleges his due process rights were violated by the misconduct of the court reporter, when the defendant and the court reporter allegedly flirted and passed a note during the jury selection phase of the trial.

## II. Discussion

Chi's federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), therefore the petition is subject to AEDPA's requirements. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, a petitioner must apply for and obtain a COA before appealing a district court's denial of habeas relief. 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The district court denied Chi's request for a COA; therefore, his only alternative is to obtain a COA from this Court. *See* 28 U.S.C. § 2253(c); *see also Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006).

We will issue a COA if Chi can make "a substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). We acknowledge that the inquiry of this

5

Court "is a threshold inquiry only – and does not require full consideration of the factual and legal bases of [the petitioner's] claim." *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005). Because Chi was sentenced to death, "we must resolve any doubts as to whether a COA should issue in his favor." *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005).

In determining whether reasonable jurists would debate the district court's assessment of the claims presented, we keep in mind that a petitioner is entitled to habeas relief under AEDPA only if the state court's decision is (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005). Furthermore, "[t]he state court's findings of fact are entitled to a presumption of correctness and the petitioner may overcome that presumption only by clear and convincing evidence." *Leal*, 428 F.3d at 548 (citing 28 U.S.C. § 2254(e)(1)).

## A. The Vienna Convention

Chi claims that, as a citizen of Honduras, he should have been advised of his right under Article 36 of the Vienna Convention to

6

contact the Honduran Consulate upon his arrest.[1] Because he was not advised of this right, Chi argues that statements he made to a police officer after his arrest were inadmissible.[2]

Chi raised his Vienna Convention claim at his trial, but he did not raise the claim on direct appeal in state court. Both the TCCA in Chi's state-habeas proceedings and the district court in Chi's federal-habeas proceedings determined that the failure to raise this issue on direct appeal rendered it procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991)

---

[1]Article 36 of the Vienna Convention provides in relevant part: "[I]f [the detained national] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. . . . The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph." Vienna Convention on Consular Relations Art. 36(1)(b), *done* Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

[2]Miguel Brambila, an officer with the Los Angeles Police Department, testified in a hearing that he was in charge of booking Chi. During a routine strip search, Chi allegedly said:

"I know I'm in for murder and I know I'm going to die, but I didn't kill anyone. Yes, I committed robberies, but I didn't shoot anyone. It was the other guy. He shot the man in the back and as I turned around and walked away, he shot the other guy. I couldn't believe it. I had been smoking marijuana all day and I didn't know what was going on. I know – are they going to kill me because I was with him when the killing happened? I know that's the penalty, but I didn't do anything."

Brambila testified that these comments were spontaneous and not in response to any questioning. Brambila admitted that he did not inform Chi of his right to contact the Houduran Consulate. Brambila also claimed that he was unaware that Chi was not a U.S. citizen.

(determining there can be no federal review of a state court decision if that decision is based on an independent state law ground, either substantive or procedural); *see also Ex parte Rojas*, 981 S.W.2d 690, 691 (Tex. Crim. App. 1998) ("It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'"(citing *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991))).

Chi argues that procedural default rules cannot apply to this claim, but this argument is foreclosed by the recent Supreme Court decision in *Sanchez-Llamas v. Oregon*, __ U.S. __, 126 S. Ct. 2669, 2687 (2006) ("We therefore conclude...that claims under Article 36 of the Vienna Convention may be subjected to the same procedural default rules that apply generally to other federal-law claims.").

Therefore review of this claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The district court correctly concluded that Chi has not shown (1) cause for his default, (2) resulting prejudice from the default, or (3) that failure to consider this issue will result in a miscarriage of justice.[3] Reasonable jurists would not debate the district court's

---

[3]We agree with the district court that given the overwhelming evidence against Chi, including the testimony of the two surviving store employees, Chi would be hard pressed to show any prejudice

determination that this claim is procedurally barred.

B. Texas Death Penalty Scheme

Chi next argues that he should be granted a COA based on his claim of a violation of equal protection as outlined in *Bush v. Gore*, 531 U.S. 98 (2000). Chi alleges that *Bush v. Gore* renders Texas' death penalty scheme unconstitutional because it fails to set forth uniform standards as to when a prosecutor should seek the death penalty, thus leading to the disparate treatment of similarly situated people accused of capital offenses. The district court rejected the argument that *Bush v. Gore*, a case involving equal protection in the election process, had any relevance to the constitutionality of Texas' death penalty scheme.

Chi's arguments are foreclosed by this Court's decision in *Coleman v. Quarterman*, 456 F.3d 537 (5th Cir. 2006). "In two unpublished decisions, this court previously has discussed *Bush v. Gore*'s utter lack of implication in the criminal procedure context. We adopt the reasoning of those persuasive opinions and, likewise, conclude that the question is beyond debate." *Coleman*, 456 F.3d at 542-43 (citing *Wyatt v. Dretke*, 165 F. App'x. 335 (5th Cir. 2006) (unpublished); *Hughes v. Dretke*, 160 F. App'x. 431 (5th Cir. 2006)

---

stemming from the admission of his statements to the police. Furthermore, in *Sanchez-Llama*, the Supreme Court rejected the argument that violations of Article 36 of the Vienna Convention require the exclusion of incriminating statements made to police. *See Sanchez-Llama*, 126 S. Ct. at 2682.

(unpublished)). Reasonable jurists would not find the district court's resolution of this claim debatable.

## C. Court Reporter Misconduct

Finally, Chi asserts a violation of his due process rights as a result of the court reporter flirting with him during the jury selection phase which in turn caused him to act inappropriately in front of prospective jurors. Specifically, two bailiffs observed the court reporter and Chi smiling at each other, and at one point Chi was observed licking a piece of candy in a seductive manner while looking at the court reporter, who was then seen smiling back. The court reporter also admitted to passing a note to Chi that said "Can I trust you?" This activity was brought to the attention of the judge. The judge replaced the court reporter and denied Chi's motion for mistrial after determining there was no issue regarding the integrity of the record. On review of this issue, the district court determined Chi's argument of a due process violation to be without merit.

The parties acknowledge that there is a lack of case law involving either the misconduct of, or inappropriate contact by, a court reporter during trial. However, regardless whether we compare these circumstances to cases involving extrajudicial contact or prosecutorial misconduct, a common thread among those cases is that there needs to be some resulting harm to the defendant. *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The standard is

10

whether the [prosecutorial] misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))); *United States v. Burke*, 496 F.2d 373, 377 (5th Cir. 1974) (determining that the second prong in the test for improper extrajudicial conduct is whether the defendant was prejudiced).

Chi has made no showing of prejudice from the events that occurred. Defense counsel conceded that it is unknown if the incident was even seen by any of the jurors. Chi's only argument for prejudice is that his request for an evidentiary hearing to establish harm has been denied. However, to be entitled to discovery and a hearing, a petitioner's factual allegations must be specific, not merely speculative or conclusory. *See Perillo v. Johnso*n, 79 F.3d 441, 444 (5th Cir. 1996). Chi's request for an evidentiary hearing is unsupported by specific factual allegations of prejudice and appears only to be an attempt to conduct a fishing expedition. Therefore we conclude that reasonable jurists could not debate the district court's determination that Chi's due process rights were not violated.

### III. Conclusion

For the foregoing reasons, Chi's Application for a Certificate of Appealability is DENIED.

11