United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 4, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-70022

_____

PRESTON HUGHES, III,

Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:01-CV-4073

_____

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Preston Hughes, III was convicted and sentenced to death for
the 1988 murders of fifteen-year-old Shandra Charles and her three-
year-old cousin, Marcell Taylor. He requests a certificate of
appealability ("COA") to appeal the district court's denial of
federal habeas relief for sixteen claims. The request is GRANTED,
in part, and DENIED, in part.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

At trial, the State presented evidence that Hughes stabbed both of the victims in the neck and chest. Shandra Charles lived long enough to tell police that "Preston" had stabbed her after trying to rape her. The police officers went to a nearby apartment complex. The only person living there named "Preston" was Hughes. He agreed to accompany the officers to the police station, where he later gave two written statements admitting that he had stabbed both victims.

At the punishment phase, Tracy Heggar testified that Hughes had raped her in 1985 when she was thirteen years old. She testified further that Hughes had threatened her with a gun in an attempt to prevent her from testifying against him about the rape. The State presented evidence that, at the time of the murders, Hughes was serving two ten-year probated terms for the aggravated sexual assault and aggravated assault of Heggar. Six of Hughes's friends and his mother testified that he was a good-natured, non-violent person. Hughes testified at the guilt and punishment phases of trial.

The Texas Court of Criminal Appeals affirmed Hughes's conviction and sentence on direct appeal. Hughes v. State, 878 S.W.2d 142 (Tex. Crim. App. 1993), cert. denied, 517 U.S. 1152 (1994). His first state habeas application was denied with a written order. Ex parte Hughes, No. 45,876-01 (Tex. Crim. App. Sept. 13, 2000). His second state habeas application was dismissed

as an abuse of the writ. <u>Ex parte Hughes</u>, No. 45,876-02 (Tex. Crim. App. Nov. 14, 2001).

In an 82-page opinion, the district court denied Hughes's petition for federal habeas relief and denied a COA. Hughes now requests a COA from this court for eight claims.

## II

To obtain a COA, Hughes must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(A). To make such a showing, he must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). In making our decision whether to grant a COA, we conduct a "threshold inquiry", which consists of "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Id</u>. at 327, 336. "While the nature of a capital case is not of itself sufficient to warrant the issuance of a COA, in a death penalty case any doubts as to whether a COA should issue must be resolved in the petitioner's favor." <u>Ramirez v. Dretke</u>, 398 F.3d 691, 694 (5th Cir. 2005) (internal quotations and citations omitted).

A

Based on our limited, threshold inquiry and general assessment of the merits of Hughes's claims, we conclude that the following claims present issues that are adequate to deserve encouragement to proceed further:

Claim 3: Whether the jury instructions at the punishment phase of the trial gave the jury a means for considering and giving effect to Hughes's mitigating evidence, and whether this claim is procedurally barred.

Claim 5: Whether, at the punishment phase, the jury improperly considered a prior conviction that was later overturned on appeal.

Claim 6: Whether the prosecutor violated Hughes's rights under the Fourteenth Amendment by arguing at the close of the punishment phase that Hughes's counsel was wrong to cross-examine Tracy Heggar, who testified as a witness for the State.

Accordingly, we GRANT a COA for these claims. If petitioner Hughes wishes to file a supplemental brief with respect to the merits of the claims for which a COA has been issued, he may do so within thirty days of the date of this order. The supplemental brief should address only matters that have not already been covered in the brief in support of the COA application. The State may file a response fifteen days thereafter.

4

Hughes has failed to demonstrate that jurists of reason could disagree with or find debatable the district court's resolution of the issues presented in the following claims, and we therefore DENY his request for a COA for those claims, for the reasons set forth below:

Claim 1: Whether the district court erred by holding that many of Hughes's claims were procedurally barred and/or barred by Teague v. Lane, 489 U.S. 288 (1989). The district court noted that Hughes had conceded that he raised most of his claims for the first time in his second state habeas application, which the Texas Court of Criminal Appeals had dismissed as an abuse of the writ. The district court applied well-settled precedent to hold that the Texas abuse of the writ doctrine provided an independent and adequate state ground for the purpose of imposing a procedural bar. It held that, although the changes in the law were external factors, Hughes had failed to allege how the government had interfered with his ability to discover and investigate his claims, or that his claims were unavailable at the time he filed his direct appeal or his first state habeas application. The district court held that Hughes did not fit within the fundamental miscarriage of justice exception because he had not presented any evidence establishing that he did not commit the crime for which he was convicted or that he is otherwise actually innocent of the charges against him. The court also rejected each of the barred claims on

the merits and, therefore, concluded that Hughes had not established prejudice. The district court's application of <u>Teague</u> and the procedural bar based on the Texas abuse of the writ doctrine is not debatable. We therefore DENY a COA for this claim.

<u>Claim 2</u>: Whether Hughes's statements to the police were obtained in violation of the Constitution because he was verbally threatened, physically abused, and intoxicated. The district court held that this claim is procedurally barred. Although Hughes filed a written motion to suppress his confession, which was denied by the trial court following a hearing, he did not challenge the voluntariness of his confession on direct appeal. Instead, he argued that the confession was inadmissible as fruit of an illegal arrest in violation of the Fourth and Fifth Amendments. He raised those same claims in his initial state habeas application. The district court stated that Hughes did not make any allegation or argument that his statements were tainted by verbal threats, physical abuse, or intoxication until his second state habeas application, which was dismissed as an abuse of the writ.

Alternatively, the district court held that this claim is without merit. It noted that the state trial court conducted a hearing on Hughes's motion to suppress and concluded that Hughes's statements were voluntary. The district court recited the following factual findings by the state trial court: Hughes's assertion that his confession was coerced by threats or abuse was not credible; Hughes's demeanor did not reflect a person who would

6

be easily intimidated into making a false confession; Hughes had extensive experience with the criminal justice system; Hughes was an expert in martial arts; Hughes was allowed to make several private telephone calls after making his statements, but he did not complain about threats or abuse to the persons he called; and photographs taken of Hughes shortly after he was charged did not show any evidence of physical abuse. The district court held that Hughes's conclusory affidavit, unsupported by any other evidence, was insufficient to undermine the detailed findings of fact made by the state trial court.

Finally, the district court held that any error was harmless in the light of the other evidence of guilt.

Although the district court's harmless error analysis erroneously refers to evidence that was not introduced until the punishment phase of the trial, its conclusions that this claim is procedurally barred or, alternatively, meritless in the light of the state court's factual findings, are not debatable. We therefore DENY a COA for this claim.

Claim 4: Whether the evidence is insufficient to support the jury's finding that Hughes acted deliberately in killing the second victim, three-year-old Marcell Taylor. Hughes relies for support on his statement to the police that he stabbed the little boy after the little boy began crying and walked between Hughes and Shandra Charles (the first victim). He contends that this evidence shows that he did not deliberately stab the second victim, but only

7

stabbed him accidentally when the child wandered into the path of his knife while he was stabbing the first victim.

The district court held that this claim is procedurally barred because Hughes raised it for the first time in his second state habeas application, which was dismissed as an abuse of the writ. Alternatively, the district court held that the claim failed on the merits. The district court noted that both of the victims were stabbed in the chest and neck, perforating their carotid arteries and jugular veins. The district court cited state law holding that evidence that a person is armed and has repeatedly stabbed his victim is proof that his actions were deliberate. The district court concluded that, based on the facts that both of the victims suffered nearly identical wounds and were stabbed repeatedly, a rational trier of fact could have found that Hughes had adequate time to contemplate the effect of his actions on Marcell Taylor during the course of the offense. Reasonable jurists would not find the district court's decision debatable. Accordingly, Hughes is not entitled to a COA for this claim.

Claim 6 (in part): As stated earlier, we have granted a COA for Hughes's claim that the prosecutor violated his rights under the Fourteenth Amendment by arguing at the close of the punishment phase that Hughes's counsel was wrong to cross-examine Tracy Heggar, who testified for the State. Hughes also requests a COA for his claims that the prosecutor's argument violated the Sixth and Eighth Amendments.

8

The prosecutor argued that Heggar's testimony "alone is enough to put the needle in this man's arm. And for that little girl to be brought down here and for [defense counsel] to put her on trial again is not right." Defense counsel objected; the prosecutor apologized; and the court overruled the objection. The prosecutor then said: "They have done nothing wrong. They're trying to protect their client. It's their job. It doesn't mean it's the right thing to do." Defense counsel objected again, and the trial court sustained the objection and instructed the jury to disregard the last remark of the prosecutor and not consider it for "any purpose whatsoever".

On direct appeal, the Texas Court of Criminal Appeals held that the argument was improper and that the trial court erred by overruling the initial objection. However, it concluded that the error was cured by the prompt instruction to disregard the second comment.

The district court held that <u>Teague</u> bars any claim of prosecutorial misconduct under the Sixth and Eighth Amendments because challenges to improper prosecutorial remarks are governed by the Fourteenth Amendment. The district court's decision with respect to the Sixth and Eighth Amendments is not debatable. We therefore DENY a COA for this claim insofar as it relies on the Sixth and Eighth Amendments.

<u>Claim 7</u>: Whether Hughes's conviction and sentence were obtained in violation of his right to equal protection, because

9

capital punishment is disproportionately imposed on members of his race (African-American).  Hughes argues that the Supreme Court's decision in Bush v. Gore, 531 U.S. 98 (2000), provides a broader interpretation of equal protection and entitles him to an evidentiary procedure like the one described in Batson v. Kentucky, 476 U.S. 79 (1986), to allow him to determine whether impermissible racially-based factors were considered by the individuals involved in investigating, arresting, and prosecuting the case against him.

The district court held that this claim is procedurally barred because Hughes raised it for the first time in his second state habeas application, which was dismissed as an abuse of the writ. Alternatively, the district court rejected the claim on the merits because Hughes had not presented any direct evidence that his conviction was obtained as a result of racially discriminatory practices of the type that might support an equal protection claim. The court held that Bush v. Gore does not require an evidentiary hearing to determine the intent of the police and prosecutors and that, even if a Batson-type inquiry of the sort suggested by Hughes were performed in this case, Hughes would not be entitled to relief because there are race-neutral explanations for his arrest and prosecution, and he cannot show that, but for his race, the police would not have investigated him as a suspect or that the prosecution would not have charged this case as a capital offense. In the further alternative, the district court held that the rule proposed by Hughes -- that Bush v. Gore affords a Batson-type

10

challenge to determine whether the individuals involved in investigating, arresting, and prosecuting a case acted with discriminatory intent in seeking the death penalty -- is barred by Teague. The court rejected Hughes's contention that his claim is covered by the Teague exception for principles essential to a concept of ordered liberty.

Reasonable jurists would not find the district court's rejection of this claim debatable. Accordingly, we DENY a COA.

Claim 8: Whether Hughes is entitled to relief under the Eighth and Fourteenth Amendments because there is new evidence that makes it clear that he is no longer a danger to society. The "new" evidence Hughes offers in support of this claim is that he has been a well-behaved prisoner on death row for over twelve years and has reached an age where the rate of offense among the population of males drops off dramatically.

The district court held that this claim is procedurally barred because it was raised for the first time in Hughes's second state habeas application, which was dismissed as an abuse of the writ. Alternatively, the district court denied relief on the merits because no federal authority supports the claim. Moreover, the district court observed that the evidence presented by Hughes, although recent in time, does not qualify as "new". The court noted that Hughes and his mother and several other witnesses at the punishment phase testified that Hughes would behave well in prison if given a life sentence. Therefore, the court held that the jury

11

at the punishment phase was not precluded from considering the possibility that Hughes might enjoy an unblemished disciplinary record while on death row or the possibility that, with the passage of time, his propensity to engage in violent behavior might diminish. In addition, the district court concluded that relief is barred under Teague because the rule proposed by Hughes -- that post hoc proof of good behavior in prison and a defendant's advanced age are sufficient reasons to set aside a jury verdict based on its determination of evidence presented at trial that the defendant poses a future danger to society -- is not dictated by precedent existing at the time his conviction became final. The district court's decision is not debatable. Therefore, we DENY a COA for this claim.

COA GRANTED in part and DENIED in part.