United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 31, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

**No. 04-70051**

**WILLIAM E. WYATT, JR.,**

**Petitioner-Appellant,**

**versus**

**DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION**,

**Respondent-Appellee.**

**Appeal from the United States District Court
for the Eastern District of Texas
(1:01-CV-00212-TH)**

Before JONES, Chief Judge, and BARKSDALE and PRADO, Circuit Judges.

PER CURIAM:[*]

William E. Wyatt was convicted in Texas state court of capital murder of a child under the age of six and sentenced to death. After denying habeas relief on all claims, the district court granted Wyatt a certificate of appealability (COA) for two issues: (1) whether the State's failure to produce a notebook prepared by the victim's mother (after her child's death) violated due process, pursuant to **Brady v. Maryland**, 373 U.S. 83 (1963) (holding prosecution's suppression of favorable material evidence violates

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

due process) (*Brady*-claim); and (2) whether *Ring v. Arizona*, 536 U.S. 584 (2002) (holding Sixth Amendment right to jury trial violated when trial judge determines presence of aggravating circumstances for imposition of death penalty), is inconsistent with the prejudice prong for ineffective assistance of counsel (IAC) under *Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002) (en banc) (holding that, to establish IAC, defendant must satisfy two elements stated in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) counsel's performance was deficient; and (2) that deficiency caused prejudice), *cert. denied*, 537 U.S. 1104 (2003). **Wyatt v. Dretke**, No. 1:01-cv-00212 (E.D. Tex. 2004) (**USDC Opn.**).

In addition, relying on *Bush v. Gore*, 531 U.S. 98 (2000) (holding Equal Protection Clause requires uniform and specific standards for vote counting), Wyatt requests a COA from this court on a third issue: whether the Texas death penalty statute violates equal protection because it provides no uniform standards for when prosecutors should seek that penalty.

For this third issue, a COA is **DENIED**. For the two issues for which the district court granted a COA, the denial of habeas relief is **AFFIRMED**.

I.

On 4 February 1997, Damien Willis (the child), the three-year-old son of Wyatt's then-girlfriend, Renee Porter, with whom Wyatt lived, was left in Wyatt's care while Porter was at work. At

2

approximately 6:00 p.m., Wyatt called 911, reporting the child had accidentally drowned in the bathtub. When emergency personnel arrived, the child had no pulse, was not breathing, and was cold to the touch. Paramedics attempted CPR and transported the child to the hospital, where he was pronounced dead at 7:24 p.m. The attending physician noted the child was unusually cold (his temperature was 84 degrees, when approximately 96 would have been expected) and had bruising on his forehead and thighs and both fresh and healed injuries to his rectum; and opined that the child had been sexually assaulted prior to his death. The medical examiner who performed an autopsy on the child stated that the cause of death was homicidal violence, including smothering.

Wyatt was taken to the police station, where he signed three statements over three days. His first statement (4 February) provided: he was in the laundry room while the child was bathing; Wyatt returned to the bathroom to find the child underwater; and, after attempting CPR, he called 911. On 5 February, Wyatt gave a similar statement, but, acknowledging he had not told the entire truth previously, confessed to sodomizing the child before he took a bath. On 6 February, again acknowledging he had not been completely truthful previously because he was scared, Wyatt stated: while Porter was at work, the child wanted to take a bath; after the child began running the bath water, Wyatt saw something on the television that "made [him] feel like having sex"; Wyatt sodomized

3

the child; Wyatt left the room and returned; believing the child had lodged something in the light socket, he hit the child with a belt five or six times; the child began screaming; to stop him, Wyatt held a plastic bag over his mouth; when the child tried to jerk away from Wyatt, the child hit his head on the tub; Wyatt left to get ice for the child's forehead; when Wyatt returned, the child was not breathing; and after attempting CPR, Wyatt called 911.

In 1998, Wyatt was found guilty of capital murder of a child under the age of six, pursuant to TEXAS PENAL CODE ANN. § 19.03(a)(8), and sentenced to death. The Texas Court of Criminal Appeals affirmed. *Wyatt v. Texas*, 23 S.W.3d 18 (Tex. Crim. App. 2000). Wyatt did not seek review by the Supreme Court of the United States.

Wyatt sought state habeas relief, raising, *inter alia*, IAC claims and a *Brady*-claim concerning the State's failure to produce a hand-written notebook created by Porter after her child's death and in preparation for testifying at trial.

The state habeas trial court filed findings of fact and conclusions of law, recommending denial of relief. *Texas v. Wyatt*, 97-F-159-005 (Dist. Ct. Bowie County Tex. 2000). That court concluded, *inter alia*: Wyatt received effective assistance of counsel; and his *Brady*-claim had no merit because there was not a reasonable probability disclosure of the allegedly suppressed evidence would have resulted in a different outcome at trial. *Id.*

4

The Texas Court of Criminal Appeals denied relief. *Ex Parte Wyatt*, No. 97-F-159-5-A (2001).

In March 2002, Wyatt requested federal habeas relief, presenting approximately 20 claims. In December 2003, the district court awarded summary judgment to the State on all but two of those claims and ordered an evidentiary hearing for those two: (1) whether Wyatt's trial counsel rendered IAC by failing to inform Wyatt he could testify during the penalty phase; and (2) whether the cumulative effect of errors by trial counsel constituted IAC. *USDC Opn.*, 3 Dec. 2003 Order at 5-6, 34 (*USDC Opn. I)*. Following that hearing, the district court denied habeas relief. *USDC Opn.*, 18 Oct. 2004 Order at 8 (*USDC Opn. II).* Wyatt appealed and requested a COA on six claims; the district court granted a COA for two issues, encompassing three of the claims. *USDC Opn.*, 9 Dec. 2004 Order at 2 (*USDC Opn. III).*

## II.

Wyatt's 28 U.S.C. § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See*, *e.g.*, *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Wyatt's COA request is considered first, followed by the two issues for which the district court granted a COA.

5

Under AEDPA, Wyatt must obtain a COA from either the district, or this, court to appeal the denial of habeas relief on an issue. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). To obtain a COA, Wyatt must "ma[k]e a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack*, 529 U.S. at 483. In that regard, Wyatt must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484).

In deciding whether to grant a COA, a federal court is limited, *inter alia*, "to a threshold inquiry into the underlying merit of [Wyatt's] claim[]". *Id.* at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claim[]." *Id.* at 336. Instead, our analysis "requires an overview of the claim[] in the habeas petition and a general assessment of [its] merits". *Id.* This being a death penalty case, "any doubts as to whether a COA should issue must be resolved in [Wyatt's] favor". *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

6

For purposes of the requisite threshold-inquiry, we are mindful that, in ruling on the merits, the district court was required to defer to the state court's adjudication on questions of law and mixed questions of law and fact, unless the state court's "decision ... was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). That decision is contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". *Miniel v. Cockrell*, 339 F.3d 331, 337 (5th Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004).

Likewise, for this threshold-inquiry, we are mindful that, in ruling on the merits, the district court was required to defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). In that regard, those findings were "presumed to be correct"; Wyatt had "the burden of rebutting [that] presumption ... by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

7

In the state habeas court, as well as in the district court, Wyatt claimed the Texas death penalty statute is facially unconstitutional because it lacks uniform and specific requirements for when prosecutors should seek the death penalty, resulting in arbitrary and disparate treatment of similarly situated people. Finding this claim was presented to, but not addressed by, the state court, the district court addressed it *de novo* and held it barred by the non-retroactivity doctrine of **Teague v. Lane**, 489 U.S. 288, 301 (1989) (generally barring retroactive application of new rules of criminal procedure).

In his COA application in district court, however, as in his application here, Wyatt maintains: **Bush v. Gore** involved a change in substantive law and, therefore, his claim is not **Teague**-barred. Decided in 2000, **Bush v. Gore** held the Equal Protection clause requires uniform and specific standards for vote counting. 531 U.S. 98.

Although it appears Wyatt did not rely upon **Bush v. Gore** in district court until his COA request, he did raise the Equal Protection claim that the district court considered, and rejected, on habeas review. Accordingly, we will consider **Bush v. Gore** in ruling on this COA request.

In deciding whether to grant a COA on this issue, we need not address a possible **Teague**-bar because, on its face, the **Bush v. Gore** holding is limited to the facts at issue there — the 2000

8

presidential election. *Id.* at 109. Obviously, those facts are not remotely similar to those at issue here — the State's seeking application of the death penalty for the murder of a three-year-old child, after the child had been sexually assaulted and abused in other ways.

For this issue, Wyatt relies almost solely on *Bush v. Gore* and does not otherwise demonstrate how, or why, the Texas death-penalty system violates the Equal Protection Clause. He has not made the requisite substantial showing of the denial of a constitutional right. Restated, reasonable jurists could not debate whether the Texas death penalty statute is unconstitutional under *Bush v. Gore* or whether the issue deserves encouragement to proceed further.

B.

For the two issues certified by the district court (*Brady*-claim and the procedure for evaluating an IAC claim), we engage in a merits determination under AEDPA. As discussed, in ruling on the merits, the district court was required under AEDPA to defer to the state court's adjudication on questions of law and mixed questions of law and fact, unless that "decision ... was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1); *Hill*, 210 F.3d at 485. Again, a state court's decision is contrary to clearly established federal law only if it "reaches a legal conclusion in direct conflict with a prior decision of the

9

Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". *Miniel*, 339 F.3d at 337.

As also discussed, the district court was required to defer to the state court's factual findings unless they "resulted in a decision that was based on an unreasonable determination of the facts in [the] light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). Again, those findings are "presumed to be correct"; Wyatt has "the burden of rebutting [that] presumption ... by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

1.

Wyatt sought a COA on whether the State violated his due process rights under **Brady**. The district court granted the COA, however, on whether such claimed suppression "constituted only harmless error". *USDC Opn. III* at 2. Nevertheless, earlier on the merits, the district court did *not* perform a harmless error review; instead, its analysis rested on **Brady**. It held, somewhat consistent with the stardard of review imposed by AEDPA, that "the State court's denial of this claim was reasonable". **USDC Opn. I** at 8. (Again, the standard of review under AEDPA is whether the state court's decision was "unreasonable", *not* whether, as held by the district court, it was "reasonable". Needless to say, different factors must be considered, as discussed *supra*.) Like the district

10

court, we review the merits of this claim under **Brady.** In other words, concerning the language of the COA, we understand "harmless error" to mean "not material", as discussed *infra*.

Well after Wyatt's horrific abuse of the child, Porter created the notebook to aid in preparation for her trial testimony. The State concedes that, neither before nor during trial, did it produce the hand-written notebook prepared by Porter, the victim's mother. It was neither read, nor otherwise presented, to the jury. Wyatt's counsel became aware of the notebook during his investigation for state habeas relief.

The well-known elements for a **Brady**-claim are: (1) the prosecutor *suppressed* evidence, (2) *favorable* to the defense, (3) and *material* to guilt or punishment. **Brady,** 373 U.S. at 87. Evidence is constitutionally material if there is "a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different". **United States v. Bagley**, 473 U.S. 667, 682 (1985) (emphasis added); **Miller v. Dretke**, 404 F.3d 908, 913-16 (5th Cir. 2005) (emphasizing "reasonable probability" element of materiality). This reasonable probability standard is met if the suppression is significant enough to undermine confidence in the outcome of the trial. **Kyles v. Whitley**, 514 U.S. 419, 434 (requiring demonstration of reasonable probability that result of proceeding would have differed had evidence been disclosed).

11

For assessing materiality, *vel non*, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense". *Id.* at 436-37. Along this line, in determining whether evidence is material for **Brady** purposes, we must consider the cumulative effect of all suppressed evidence, rather than considering each item individually. *Id.* "We evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effect for purposes of materiality separately ....". *Id.* at 437 n.10.

The state habeas court held: because the notebook was not used before the jury, and because there was no substantial difference between Porter's testimony and the notebook, its non-disclosure did not undermine confidence in the outcome of the trial. **Texas v. Wyatt**, 97-F-159-005 (Dist. Ct. Bowie County Tex. 2000).

Although the State did *not* produce the notebook, the district court found Wyatt did *not* satisfy **Brady's** suppression prong because, *inter alia*, he would have had independent knowledge of the relevant facts described in it. **USDC Opn. I** at 8; *see* **West v. Johnson**, 92 F.3d 1385, 1399 (5th Cir. 1996) (holding **Brady** is *not* violated where defendant would have known of allegedly suppressed evidence), *cert. denied*, 520 U.S. 1242 (1997). Wyatt claims he demonstrated the notebook was suppressed for **Brady** purposes,

12

despite the holding of **West**, because its value was *not* in its content but in its inconsistency with Porter's testimony, with which he could have impeached her. Likewise, Wyatt claims Porter's unchallenged testimony left the jury with the impression that Wyatt was indifferent to the child's death and, therefore, affected the jury's determination of guilt.

Because the notebook does *not* meet the materiality prong of **Brady**, as discussed, *infra*, we need *not* address whether it was either suppressed or favorable to Wyatt. (If those prongs were addressed, it is arguable that, even if the notebook was suppressed, it was *not* favorable to Wyatt.) Regarding materiality, Wyatt points to several notebook entries he claims could have been used to impeach Porter.

The first contention concerns an entry about "red mark[s]" on the child, which Porter attributed to Wyatt. Porter testified these injuries were severe and involved "welts on his legs and his butt" and bleeding. According to Wyatt, with the notebook, he could have impeached Porter on the severity of the injuries and left the jury with the impression she was embellishing, affecting her credibility. The State maintains the entry, when read in context, is not significantly different from her testimony. The notebook stated: "He showed me his butt[.] [There] were a lot more mark[s] there". As the state habeas court found, this is not substantially different from Porter's testimony.

13

Second, Porter's notebook reflects that, prior to the day of the child's death, Wyatt *denied* whipping the child when Porter confronted Wyatt. In her testimony, Porter did not mention Wyatt's denial. He claims that, because that testimony went unchallenged, it left the impression Wyatt admitted causing the child's injuries. With the notebook, Wyatt contends he could have presented his denial and challenged the impression he caused the injuries. The State responds that Wyatt would have known he denied whipping the child and, thus, could have used that information to impeach Porter, even without the notebook. In any event, this omission provides, at best, minor impeachment value in the light of Wyatt's confession to sexually abusing the child. (Additionally, use of this evidence for impeachment would have been minimal in the light of the testimony of Porter and David Willis, the child's father: both admitted they had each previously beaten the child on at least one occasion.)

Third, Porter testified that, after leaving the child alone with Wyatt and coming home to find the child naked and having had a bowel movement in bed, she noticed he seemed afraid of Wyatt. For this specific instance, the notebook does *not* mention that fear. Wyatt claims: without Porter's testifying the child seemed afraid, there would be no inference his bowel movement was a result of Wyatt's sodomizing him; and Wyatt could have impeached Porter for embellishing her trial testimony. The State points to portions

14

of the notebook that record Porter's noticing a change in the child's attitude toward Wyatt and his being afraid of him. For this point, in the light of these statements taken as a whole, the notebook would have had no impeachment value.

Fourth, Porter testified she noticed a scratch while giving the child a bath, and, when she asked the child what happened, he looked at Wyatt, but Wyatt did not offer an explanation. The notebook does *not* mention that. Had he had the notebook, Wyatt maintains he could have impeached Porter with her failure in the notebook to mention the scratch and Wyatt's failure to explain it. Again, this omission does not rise to the level of an inconsistency; any impeachment value is minimal.

Fifth, Porter testified to two instances, the day before the child's death, when he appeared afraid of Wyatt. The notebook does *not* mention either instance. Wyatt maintains that, based on such non-entries, he would have been able to demonstrate to the jury that Porter was fabricating her testimony. According to the State, as for many of the passages in the notebook on which Wyatt relies, Wyatt was present during the events about which Porter testified; he would, therefore, have had all the information needed to impeach Porter if her testimony was false. Again, this omission is not an inconsistency that provides meaningful impeachment value.

Sixth, Porter testified that, after leaving the child alone with Wyatt, Porter came home earlier than expected and found

15

Wyatt, with his shirt off, standing at the child's door. According to Wyatt, he could have impeached Porter for her failure to mention this in the notebook. The State again notes Wyatt would have known if Porter's description of the facts was untrue, and, if so, could have impeached her. Wyatt also contends this testimony left unchallenged the inference Wyatt was about to sexually abuse the child. In any event, Wyatt confessed that he sexually abused the child just before his death. In the light of Wyatt's confession, this omission has little, if any, impeachment value.

Finally, the notebook does *not* mention Porter's impression, about which she testified at trial, that Wyatt was not upset when he called her at work to tell her the child was injured (the injuries from which he died). Wyatt contends he could have used this omission to demonstrate Porter's testimony was contrived to harm Wyatt. As the State points out, however, Porter's testimony in this regard was already impeached by testimony of one of the first officers to respond to Wyatt's 911 call. That Porter omitted this from the notebook is of no additional impeachment value.

Having evaluated each notebook entry, or omission, cited by Wyatt, we now evaluate their cumulative effect for purposes of the requisite **Brady** materiality. As discussed, evidence is material for that purpose only if there is a *reasonable probability* that, had the evidence been disclosed, the result would have been different. **Bagley**, 473 U.S. at 682. Pursuant to AEDPA, and

16

considering the notebook as a whole, Wyatt has *not* demonstrated as unreasonable the state habeas court's conclusion that the notebook entries or omissions do *not* undermine confidence in the jury verdict.

First, the notebook was written in preparation for Porter's trial testimony, well after Wyatt's abuse of the child. Because it was not written contemporaneously, the notebook, as a whole, merely recounted Porter's memory of the events. If Porter's testimony was inconsistent with Wyatt's memory, he could have impeached Porter without the use of the notebook. Again, the jury was *not* aware of the notebook. It is not as if the jury had it, but Wyatt was not allowed to question Porter about it.

Furthermore, the notebook does *not* present any *new* evidence that is meaningfully inconsistent with Porter's trial testimony. The differences and omissions cited by Wyatt are insignificant in the light of the record as a whole, especially in the light of Wyatt's confessing to having sexually assaulted the child, whipping him, and covering his face with a plastic bag just prior to his death.

In sum, Wyatt fails to demonstrate that the state habeas court's decision was either "contrary to, or involved an *unreasonable* application of, clearly established Federal law" or "was based on an *unreasonable* determination of the facts in [the] light of the evidence presented in the State Court proceeding".

17

*Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir.) (quoting 28 U.S.C. § 2254(d)(1),(2); emphasis added), *cert. denied*, 537 U.S. 953 (2002).

2.

The other certified issue is whether the holding of *Ring*, 536 U.S. 584, is inconsistent with the analytical framework for IAC claims under *Neal*, 286 F.3d 230. *Neal* relied on *Strickland*; therefore, we will analyze this as an IAC claim. (The State correctly re-phrases the issue as being a *Strickland* issue.) For this certified issue, Wyatt presents the substance of two IAC claims he raised in the state habeas court and the district court. He maintained his counsel failed to: (1) inform him that he could testify at sentencing (for which the district court held an evidentiary hearing); and (2) investigate Wyatt's military service, which would have revealed that he was honorably discharged from the United States Marine Corps.

In denying habeas relief, the state court found Wyatt's counsel presented substantial evidence during the punishment phase of trial and, concluded, as a matter of law, that Wyatt received effective assistance of counsel during this phase. *Texas v. Wyatt*, 97-F-159-005 (Dist. Ct. Bowie County Tex. 2000).

After performing a *Strickland* analysis, the district court rejected the claims. Concerning the prejudice prong, it concluded: there was "not a reasonable probability that, had the jury heard

18

Wyatt's testimony [including about his good military record] during the punishment phase of his trial, the result of that proceeding would have been different". *USDC Opn. II* at 6. (Pursuant to AEDPA, however, and as discussed *supra*, the district court should have decided whether the state habeas court's decision was *unreasonable*.)

Instead, the district court granted a COA on the narrow issue of whether the 2004 decision in *Ring*, 536 U.S. at 609 (holding that the Sixth Amendment requires the jury, not the judge, to determine the existence of aggravating circumstances required for imposing the death penalty) is inconsistent with the framework for IAC claims employed by our 2002 en banc decision in *Neal*. As Wyatt did with his *Bush v. Gore* COA request, it appears that the IAC claim based on *Ring* was *not* presented until his COA request in district court. (Needless to say, this is *not* consistent with the procedure to be followed under AEDPA.) This notwithstanding, that court granted a COA on this issue. In the light of that court's considering, and granting, a COA on this issue, even though it was being raised for the first time in the request, we will, *dubitante*, consider it here.

As noted, because *Neal* employs the well-established *Strickland* test for IAC claims, we analyze this claim under *Strickland*. Wyatt contends: (1) the district court substituted its judgment for that of the jury, in violation of *Ring*, when it determined neither

19

instance of ineffective assistance would have resulted in a different outcome at sentencing; and (2) *Ring*'s holding is inconsistent with an appellate court's applying the **Strickland** prejudice analysis by substituting its determinations for those of the jury.

Wyatt's claim is without merit.  (Because Waytt's claim is so lacking, we need *not* consider whether it is **Teague-**barred.)  Post-**Ring**, the Supreme Court reiterated that **Strickland** articulates the proper test for IAC claims.  **Wiggins v. Smith**, 539 U.S. 510, 521 (2003).  Furthermore, **Strickland** specifically contemplates review of aggravating and mitigating factors by appellate courts in death penalty cases.  466 U.S. at 695.

III.

Wyatt's request for a COA is **DENIED**; the denial of habeas relief is **AFFIRMED.**

**COA DENIED; DENIAL OF HABEAS RELIEF AFFIRMED**