United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 18, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-70005

_____

CHRISTOPHER COLEMAN,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:02-CV-3865

_____

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Convicted of capital murder and sentenced to death, Christopher Coleman petitions for a

Certificate of Appealability ("COA") from the district court's denial of federal habeas corpus relief.

Because we find that reasonable jurists could not debate the propriety of the district court's decisions

regarding Coleman's multiple alleged constitutional errors, we deny Coleman's application for a

COA.

## I. FACTS AND PROCEEDINGS

On the night of December 13, 1995, Christopher Coleman and two other men were driving

together around Houston, Texas. They stopped on a dead-end street and waited. Soon after, another car arrived and parked behind the car in which Coleman was riding. This second car carried four people: the driver, Jose Luis Garcia-Castro; his girlfriend, Elsie Prado; Prado's brother, Heimar Prado Hurtado; and Prado's three-year old son, Danny Giraldo. Coleman and the two other men got out of their car and approached the second vehicle, where one of Coleman's companions spoke to Hurtado. Then, standing close to the passenger side of the car, Coleman opened fire on the occupants of the second vehicle.

When police arrived, they found Hurtado, Garcia-Castro, and Giraldo dead and Prado seriously injured. Prado survived her injuries and told police that she would never forget the shooter's face. She picked Coleman's picture from a photo spread nine days after the shooting. A week later, police arrested Coleman in Lawrenceburg, Tennessee.

Two Houston police officers traveled to Tennessee to transport Coleman back to Texas. Upon arriving at the Lawrenceburg police station, the Houston officers read Coleman the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and Coleman waived his rights. After roughly three hours of being interviewed by the officers, Coleman gave a recorded statement in which he admitted being present when the murders occurred; he did not admit to being the actual shooter.

In June 1997, a Texas state jury convicted Coleman of capital murder and sentenced him to death. The Texas Court of Criminal Appeals affirmed Coleman's conviction and sentence, *Coleman v. State*, No. 72,895 (Tex. Crim. App. May 5, 1999), and denied his initial state application for a writ of habeas corpus, *Ex Parte Coleman*, No. 48,523-01 (Tex. Crim. App. Apr. 18, 2001). A second state habeas application was dismissed as an abuse of the writ. *Ex Parte Coleman*, No. 48,523-02 (Tex. Crim. App. Sept. 11, 2002). In September 2004, the federal district court denied Coleman's

federal habeas application and refused to grant a COA on any of Coleman's claims.

## II.  STANDARD OF REVIEW

Coleman filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Accordingly, the petition is subject to the requirements imposed by AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under AEDPA, Coleman must obtain a COA before he can appeal the district court's denial of habeas relief.  *See* 28 U.S.C. § 2253(c).  *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners.").  The district court refused to grant Coleman a COA, so Coleman's only alternative is to petition this court directly for a COA.  *See* 28 U.S.C. § 2253(c).

"To determine whether a COA should be granted requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Summers v. Dretke*, 431 F.3d 861, 870 (5th Cir. 2005).  Coleman must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *Miller-El*, 537 U.S. at 342.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  *Miller-El*, 537 U.S. at 340.  Accordingly, "a federal court's review of a claim adjudicated in a state court is deferential."  *Summers*, 431 F.3d at 868.

> Under [28 U.S.C.] § 2254(d), a federal court cannot grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

*Hughes v. Dretke*, 412 F.3d 582, 588–89 (5th Cir. 2005) (citing 28 U.S.C. § 2254(d)). The statute permits a federal habeas court to assess only the state court's decision, not the propriety of its analysis and reasoning. *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). Furthermore, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A federal habeas petitioner "has the burden of rebutting this presumption with clear and convincing evidence." *Hughes*, 412 F.3d at 589 (citing 28 U.S.C. § 2254(e)(1)). A credibility determination by the state habeas court also is afforded deference. *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005).

## III. DISCUSSION

Coleman requests a COA on fifteen separate claims. We review the claims in turn.

A.      Claim One

Coleman brings a facial challenge to the Texas death penalty system. Specifically, Coleman points to the fact that Special Issue No. 3 in his case, the mitigation special issue,[1] does not contain a burden of proof and contends that, therefore, jurors could have believed that he was required to prove mitigation beyond a reasonable doubt. Coleman suggests that the ambiguity prevented the jury from properly considering his mitigating evidence in violation of *Penry v. Johnson*, 532 U.S. 782

_____

[1]The third special issue in Coleman's case provided:
> Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Christopher Coleman, that there is a sufficient mitigating circumstance or circumstances to warran[t] that a sentence of life imprisonment rather than a death sentence be imposed?

(2001) ("*Penry II*").

The district court noted that Coleman raised this claim for the first time on a successive state habeas that had been dismissed as an abuse of the writ. Accordingly, because the basis of the claim was reasonably available at the time of his first state habeas application, the district court found that the claim was procedurally defaulted and that even if Coleman could demonstrate cause for his default,[2] he suffered no prejudice. We agree.

"'Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the state based its rejection of that claim on an adequate and independent state ground.'" *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir.) (quoting *Martin v. Maxey*, 98 F.3d 844, 846 (5th Cir. 1996)), *cert. denied*, 126 S. Ct. 80 (2005). Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review. *Kunkle v. Dretke*, 352 F.3d 980, 988–89 (5th Cir. 2003). Furthermore, assuming that Coleman could show cause for his default, he is unable to show any resultant prejudice because his challenge necessarily fails: "[N]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof." *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir.), *cert. denied*, 126 S. Ct. 103 (2005). Reasonable jurists could not debate the district court's decision to deny habeas relief on this claim.

B.     Claims Two, Three, and Four

For his next three claims, Coleman contends that the Supreme Court's decision in *Bush v.*

---

[2]Coleman points out that *Penry II* was decided after his first state habeas application was denied. The Director argues that the grounds for Coleman's claim were reasonably available well before *Penry II*. The district court found *Penry II* inapplicable to Coleman's claim for relief. Further, *Penry II* did not announce a "new rule" that would apply retroactively. *See Bigby v. Dretke*, 402 F.3d 551, 567–68 (5th Cir.), *cert. denied*, 126 S. Ct. 239 (2005).

*Gore*, 531 U.S. 98 (2000), implicitly overrules twenty years of Supreme Court death penalty jurisprudence, including *McCleskey v. Kemp*, 481 U.S. 279 (1987), and requires that a hearing be held to determine if the decision to seek the death penalty and the Texas clemency process are unconstitutionally infused with racial considerations, in violation of the equal protection clause. The district court concluded that these claims were procedurally defaulted, since they were first raised on a successive state habeas that was dismissed as an abuse of the writ. Alternatively, the district court reasoned that *Bush v. Gore* did not announce a rule applicable to criminal cases, and if it did, that *Teague v. Lane*, 489 U.S. 288 (1989), barred its retroactive application to Coleman's case.

Reasonable jurists would not find the district court's resolution of these claims debatable. In two unpublished decisions, this court previously has discussed *Bush v. Gore*'s utter lack of implication in the criminal procedure context. *See Wyatt v. Dretke*, 165 F. App'x 335 (5th Cir. 2006) (unpublished); *Hughes v. Dretke*, 160 F. App'x 431 (5th Cir. 2006) (unpublished). We adopt the reasoning of those persuasive opinions and, likewise, conclude that the question is beyond debate.

C.    Claim Five

Coleman argues that the time limit Texas imposes on filing a habeas petition in a capital case is unconstitutional. Specifically, Coleman complains that he had only 45 days to file a petition, whereas had he been convicted of a non-capital crime, he would have had 180 days. *See* TEX. CODE CRIM. PROC. art. 11.071, § 4(a). Despite the position taken, Coleman never even alleges injury from the earlier filing deadline. In *Ferguson v. Estelle*, 718 F.2d 730, 736 (5th Cir. 1983), this court held that a habeas petitioner is "without standing to raise the potential problems of others." The district court found that Coleman lacked standing to contest the filing deadlines, since he filed his petition in the applicable timeframe and suffered no injury. Reasonable jurists could not debate the district

court's determination.

D.    Claims Six, Seven, and Eight

For his next three claims, Coleman contends that his statement to the police should have been excluded at his trial, claiming the police beat him and denied him requested counsel. The trial court held a pretrial hearing, during which the police who interviewed Coleman testified that he was read the *Miranda* warnings and waived his rights. At this hearing, Coleman never claimed that he had requested or been denied counsel. Based on the evidence adduced at the hearing, the trial court denied Coleman's motion to suppress. During the state habeas process, Coleman introduced unsworn, unnotarized statements from three individuals who were not present at the interrogation, purportedly in support of his newly-alleged claim. The state habeas court determined that the police who interviewed Coleman were credible, implicitly rejecting the credibility of the statements offered by Coleman. Noting that the offered statements were internally inconsistent and lacked any indicia of reliability, the district court found that Coleman had failed to rebut the presumption of correctness afforded the state habeas court's factual findings and credibility determinations.

To prove that his confession was coerced and that he was denied requested counsel, Coleman offers only the same unsworn statements of three individuals who were not present at the time Coleman made his statement to the police. Not only were these statements not competent evidence for purposes of defeating the Director's motion for summary judgment below, *see* FED. R. CIV. P. 56(e), they also, as the district court noted, contradict one another. Further, the fact that these statements were not offered to the trial court at the suppression hearing casts doubt on their reliability. Coleman has not offered clear and convincing evidence to rebut the presumption of correctness we afford the state habeas court's factual findings under AEDPA. Reasonable jurists

would not find the district court's determination debatable.

E.    Claim Nine

Coleman contends that a line-up at which Prado tentatively identified him was impermissibly suggestive. After hearing testimony at a suppression hearing, the trial court found that the line-up did not violate Coleman's constitutional rights. The state habeas court found that the line-up was not improperly suggestive and that Prado's in-court identification of Coleman was based on her observation of Coleman at the time of the murders. The state habeas court also found that the earlier photo spread from which Prado identified Coleman as the shooter just nine days after the murders was not improperly suggestive. The district court found that Coleman failed to rebut the determinations of the state habeas court. Additionally, the district court found that Prado's identification of Coleman from the photo spread, standing alone, was sufficient to support the later in-court identification, regardless of any impropriety in the line-up. Alternatively, the district court independently found that the line-up and in-court identification were sufficiently reliable. Coleman did not challenge the photo spread on federal habeas, thereby acceding to its propriety.

"[A] conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990) (citing *Simmons v. United States*, 390 U.S. 377 (1968)). A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification." *Id.* Such an analysis is a mixed question of law and fact. *Livingston*

*v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). *See also Sumner v. Mata*, 455 U.S. 591, 597 (1982) ("[T]he ultimate question as to the constitutionality of the pretrial identification procedures . . . is a mixed question of law and fact . . . ."). Accordingly, Coleman cannot prevail in federal habeas unless he shows that the state court acted contrary to or unreasonably applied Supreme Court precedent in finding that the line-up was not impermissibly suggestive and that, even if it were, it did not taint Prado's identification of Coleman. The Supreme Court has identified several factors to help determine the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the crime scene; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972); *Livingston*, 107 F.3d at 310–11 (applying *Biggers*). Prado was inside the car, in the rear passenger-side seat, when Coleman fired on the car from the passenger side; Prado said she saw the assailant fire the gun, at one point claimed that she would never forget the shooter's face, and described the shooter as having several identifying physical features that Coleman does not dispute accurately describe him. Furthermore, as the district court noted, nine days after the crime Prado was shown a photographic array from which she positively identified Coleman, and that array is not challenged on appeal. Assuming, without deciding, that the line-up was impermissibly suggestive, Coleman has failed to demonstrate that the state habeas court's determination that Prado's in-court identification was not improperly tainted is contrary to or an unreasonable application of Supreme Court precedent. Reasonable jurists could not debate the district court's determination.

F.    Claim Ten

Coleman argues that the trial court should have instructed the jury that he would be ineligible

for parole for forty years, in order for them to consider that circumstance in assessing his future dangerousness. Alternatively, Coleman argues that the equal protection clause is violated by the discretionary ability of Texas trial judges to inform the jury of a defendant's parole eligibility. The district court noted Supreme Court precedent indicating that juries need not be informed if a defendant will be eligible for parole, *see Ramdass v. Angelone*, 530 U.S. 156, 169 (2000),[3] and nine decisions from this circuit explicitly stating that no such requirement exists, *see, e.g.*, *Miller v. Johnson*, 200 F.3d 274, 290 (5th Cir. 2000). For Coleman's alternative equal protection argument, the district court pointed out that Coleman cited no authority on the issue and, therefore, even if his claim were true, relief would be barred by *Teague*'s non-retroactivity principles. Given the ample precedent opposing Coleman's position, *see, e.g.*, *Elizalde v. Dretke*, 362 F.3d 323, 333 (5th Cir. 2004), reasonable jurists could not debate whether the district court erred in its determination.

G. Claim Eleven

Coleman argues that his due process rights were violated because two trial witnesses testified "under duress" because the witnesses and their mother had been held as material witnesses. The state habeas court found that the witnesses had been properly held pursuant to Texas law to secure their appearance at trial, not to coerce them into testifying favorably for the prosecution. The district court found that Coleman offered no evidence to rebut the state habeas court's factual determination and that, furthermore, Coleman did not allege, much less prove, that the witnesses testified falsely.

Coleman's argument is wholly conclusory and in no way rebuts the presumption of correctness afforded the state court. Furthermore, a review of the trial transcript shows that at least

---

[3]Rather, due process only requires that juries be informed of a defendant's ineligibility for parole. *See Simmons v. South Carolina*, 512 U.S. 154, 169 (1994).

one of the witnesses told the jury that he was testifying unwillingly, thereby quelling Coleman's credibility concerns.[4] Reasonable jurists could not debate the district court's denial of federal habeas relief on this claim.[5]

H.     Claim Twelve

Coleman argues that the trial court violated the Confrontation Clause by refusing to permit Coleman's attorney to testify during the guilt phase that Prado's photo spread identification was only tentative.  As the district court noted, "Coleman's argument misstates the facts of the case": Coleman attempted to call his counsel only during the sentencing phase.  Coleman's attorney proffered testimony about a conversation he allegedly had with a prosecutor in which the prosecutor indicated that Prado's initial photo spread identification was tentative.  Coleman's counsel had no personal knowledge of the photo spread and did not know if the prosecutor had been at the photo array when Prado made the identification.  The state habeas court found that the prosecutor was not present at the photo array.  The district court found no error in the trial court's conclusion that the inadmissible double hearsay testimony should be excluded.

Assuming that the trial court erred in its evidentiary decision to exclude the double hearsay, "the mere occurrence of an evidentiary violation is not sufficient to establish a [Confrontation Clause] violation." *Hafdahl v. Johnson*, 251 F.3d 528, 539 (2001).  Sitting in habeas, the only question a

---

[4]The witness told the jury that he wished to invoke his Fifth Amendment right against self-incrimination but had been told by the judge that his testimony would in no way incriminate him.

[5]Coleman also argues that it was error for the trial judge to instruct the witnesses that they had no Fifth Amendment right not to testify because the witnesses faced no possible criminal charges. Coleman's argument is meritless. *See Roznovsky v. Estelle*, 546 F.2d 1185, 1187 (5th Cir. 1977) ("[T]he witness may not refrain from responding to questions merely because he asserts the [Fifth Amendment] privilege.  Rather, it is for the court to determine whether his silence is justified under the doctrine.").

federal court must decide is "whether the state trial court's exclusion of [Coleman]'s statement was contrary to, or involved an unreasonable application of clearly established constitutional law, as announced by the Supreme Court." *Summers*, 431 F.3d at 877. Coleman, of course, cannot point to any controlling Supreme Court precedent that would permit double hearsay to be introduced at trial. Because the state court did not unreasonably apply, or rule contrary to, Supreme Court precedent by excluding inadmissible double hearsay, the district court correctly denied relief. Reasonable jurists could not disagree over the district court's resolution of this claim.

I.      Claim Thirteen

Coleman argues that the evidence of his future dangerousness was insufficient as a matter of law for the jury to find against him on Special Issue No. 1.[6] Coleman first raised this claim before the state habeas court, but that court denied the claim because, in Texas, sufficiency of the evidence is only reviewable on direct appeal. The district court found that Coleman's federal habeas claim was procedurally barred because Texas has long held that sufficiency of the evidence claims are not cognizable in state habeas proceedings. *See Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994). Furthermore, Coleman's alleged cause of and prejudice from the procedural default are wholly conclusory, and he has failed to demonstrate a fundamental miscarriage of justice. The district court correctly held that Texas's procedural bar precludes federal habeas review of Coleman's sufficiency argument. Reasonable jurists could not debate this point.

J.      Claim Fourteen

Coleman argues that his appellate counsel was constitutionally ineffective because of the

---

[6]The first special issue provided: "Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Christopher Coleman, would commit criminal acts of violence that would constitute a continuing threat to society?"

-12-

failure to raise on direct appeal the issue of the sufficiency of the evidence to support the jury's finding of future dangerousness. Coleman did not raise this claim in his petition for federal habeas relief; rather, Coleman raised it for the first time in a Rule 59(e) motion to alter or amend the judgment. The district court found that Coleman's attempt to raise the issue after judgment was improper and refused to rule on the merits of his claim. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) ("A motion to alter or amend the judgment under Rule 59(e) . . . cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (internal quotations omitted). Since Coleman did not properly raise this claim below, we do not consider Coleman's claim in this COA petition. *See Roberts v. Cockrell*, 319 F.3d 690, 695 (5th Cir. 2003) ("We generally will not consider a claim raised for the first time in a COA application.").

K.      Claim Fifteen

For his final claim, Coleman argues that the trial court erred by ordering the jury to keep deliberating after the foreman alerted the trial judge that it was at an impasse and gave the jury's numerical split. The district court found that the trial judge's instructions to the jury to continue deliberating did not render Coleman's trial fundamentally unfair.

The jury began penalty deliberations around midday on June 5, 1997. During the second day of deliberations, the jury foreman sent the trial judge a note:

> Your Honor,
>         We have deceided [sic] special issues numbers one and two. We are at an impass [sic] on issue number three. We have solid votes on either side and they do not feel they can change their minds. We have been delibrating [sic] this issue since early this morning. Do you have any advice?

After hearing the trial judge read the note, Coleman moved for a directed verdict, which the trial

judge denied. The judge called the jury in and asked the foreman the numerical split of the jury, "without telling me who's for one way or who's for the other." The foreman responded: "The numerical difference is eight and four." The trial judge addressed the jury:

> I'm going to ask the jury to go to lunch and come back this afternoon. Give it at least another try, and I will certainly consider your note at that time. We just ask you to continue. See if you can make any headway. If you cannot, just let the Court know sometime this afternoon. Thank you again for your consideration. We'll take you to lunch right away. Thank you.

Later that afternoon, after a total of almost twelve hours of deliberation, the jury foreman sent a second note to the judge: "Your Honor, At this point we are at an impass [sic]. It does not seem that it is going to change. The vote at the moment is eleven to one." Coleman again moved for a directed verdict, which the trial court denied. After receiving this jury note, the judge did not call in the jury to talk to them directly, and the record shows only that the judge wrote a reply note to the foreman as follows: "Members of the Jury: Please continue deliberations."[7]

"A judge may encourage jurors who are having difficulty reaching a verdict to deliberate longer, and to give due consideration and respect to the views of their peers." *United States v. Straach*, 987 F.2d 232, 242 (5th Cir. 1993) (citing *Allen v. United States*, 164 U.S. 492 (1896)).

---

[7]Before responding to the jury's second note, the trial judge addressed the parties outside the presence of the jury:
> The Court at this time is going to send back a note, "After about 11 and a half hours of deliberations, members of the jury, please continue your deliberations. The reason the Court is doing this is because the last notes, the last conversation with the jury, it was eight to four, so some progress has been made. The Court is going to ask you to continue deliberations."

The state habeas court found that the trial court only sent a written response to the jury asking them simply to continue their deliberations and made no reference regarding the jury's "progress." Coleman does not challenge the state habeas court's factual determination regarding the trial court's communication with the jury; he merely asserts that it was error for the trial court to instruct the jury to continue deliberating.

Such a supplemental instruction is permissible even in the death penalty context. *Lowenfield v. Phelps*, 484 U.S. 231, 238–39 (1988). A reviewing court must consider the propriety of the supplemental jury charge "in its context and under all the circumstances." *Id.* at 237 (internal quotation omitted). The potential for coercion exists when a trial judge inquires as to the "nature or extent of [the jury's] division" and then instructs the jury to continue deliberating. *Lowenfield*, 484 U.S. at 239–40 (citing *Brasfield v. United States*, 272 U.S. 448 (1926)). At least in a federal criminal trial, the better approach is to ask questions regarding the division of jurors that think further deliberation will be useful. *Id.* at 240.

AEDPA, though, does not require us to hold the state courts to the same standard as we do federal district courts. *See Early v. Packer*, 537 U.S. 3, 9–10 (2002) (finding that the court of appeals erred in granting habeas relief based on its belief that non-constitutional Supreme Court precedent in federal criminal trials, based in the Court's supervisory powers over the lower courts, was equally applicable to state courts). A state trial judge's inquiry into the numerical split of the jury, so long as it is "simply to assess the progress of the jury," does not render a trial fundamentally unfair so as to require habeas relief. *Thompson v. Cain*, 161 F.3d 802, 810 (5th Cir. 1998). *See also Montoya v. Scott*, 65 F.3d 405, 412 (5th Cir. 1995).[8] When the answer to the question reveals that the jury is split eleven to one, it is not *per se* impermissible for the state trial judge to ask the jury to continue deliberating. *Thompson*, 161 F.3d 809–10. Furthermore, even on direct review, we have held that "the unsolicited disclosure of the jury division by the foreman is not by itself a ground for

---

[8]The Supreme Court has, at least implicitly, approved of just such a question in the habeas context. *See Packer*, 537 U.S. at 6 ("The judge then asked the foreman what the latest vote count was, but told him not to reveal which side had which number of votes. The foreman indicated that the last vote count had been 11 to 1.").

a mistrial." *United States v. Warren*, 594 F.2d 1046, 1049 n.3 (5th Cir. 1979).

In a pre-AEDPA case, we denied habeas relief to a state prisoner whose trial judge asked the numerical split of the jury without reference to how many votes were on each side and then asked the jury to continue deliberating for another thirty minutes; the jury returned a verdict of death after forty minutes. *Montoya*, 65 F.3d at 408. As in *Montoya*, Coleman's trial judge did not give a traditional *Allen* charge to the jury; the judge did not instruct the minority to reconsider its views in light of the majority's arguments nor remind the jury of the time and expense of going through another trial. Rather, the trial judge merely asked the jury to continue deliberating.

The state habeas court found that the trial judge's supplemental instruction was not coercive. Instead, that court found that "the jury's two notes show that the jury had been engaged in active deliberation." Coleman has failed to rebut the state habeas court's factual determination with clear and convincing evidence. Furthermore, the state habeas court's decision denying relief is neither contrary to nor an unreasonable application of federal law as established by the Supreme Court. It is not only permissible but proper for a trial judge to ask a jury to continue deliberating if it appears that further deliberation might be fruitful in helping the jury reach a unanimous verdict. In its response to the second jury note, the trial court explained to the parties on the record that it was requesting the jury continue deliberating because the additional deliberations clearly moved some jurors to reconsider their initial views. When considering the totality of the circumstances, *see Lowenfield*, 484 U.S. at 237, including the trial judge's initial jury instructions and the response to both jury notes, it is clear that the trial court did not coerce the jury into rendering a particular verdict. Nor do we find the point debatable among reasonable jurists.

### IV. CONCLUSION

For the foregoing reasons, we DENY Coleman's application for a COA.